## THE STATE v. SHOUR, Appellant.

### Division Two, May 22, 1906.

1. **EMBEZZLEMENT: By Secretary of Building and Loan Association: At Different Dates: One Conversion.** Where defendant, as secretary of a building and loan association, was charged with embezzlement of one hundred dollars of the funds belonging to the association, it was not necessary that the evidence show that he embezzled the entire amount on the particular date specified in the information, but the charge was sustained by proof of the receipt by him, at different dates, of the amount alleged to have been embezzled, and one conversion of the whole.

2. ——: ——: **Secs. 1374 and 1912, R. S. 1899: Distinction.** There is no contradiction or repugnancy between sections 1374 and 1912, Revised Statutes 1899. Their provisions are leveled against an essentially different class of wrongs committed by officers of a corporation or association. The former section is designed simply to regulate the conduct of the use and management of the funds belonging to the association, and does not embrace the element of a criminal intent. Under the latter section, a fraudulent intent to convert the funds belonging to the association is an essential element of the offense therein denounced. And an information charging embezzlement of the funds of a building and loan association by its secretary, is properly predicated upon section 1912.

3. ——: ——: **By Another With Defendant's Consent: Instruction: Evidence.** Where the evidence showed that but two persons had access to the funds of a building and loan association—defendant, who was its secretary, and his private clerk—the court properly instructed the jury that they should find defendant guilty of they believed that he, or another with his consent, fraudulently converted the money of the association to his own use, or to such other person's use, etc. And this instruction simply stated the converse of another instruction given for defendant, which told the jury that they could not convict defendant if they found that some person other than defendant took the money without defendant's consent.

4. ——: ——: **Instruction.** An instruction, numbered 2, set out in the statement, held to properly state the law as to embezzlement of the funds of a building and loan association by the secretary of such association.

5. ——: ——: Information: Verdict. Where the information contained but one count, and properly charged the offense of embezzlement of the funds of a building and loan association by its secretary, a verdict was proper which found the defendant "guilty as charged in the information."

6. EVIDENCE: Of Attorney in the Case. No error was committed in permitting an attorney for the prosecution to testify that a certain book had been in his possession and had been mislaid or lost and could not be found after diligent search, the purpose of such testimony being merely to lay a foundation for the introduction of secondary evidence.

7. VENUE: How Proved: Evidence. It is not necessary that the venue of a crime be proved by direct and positive evidence. It is sufficient if it can be reasonably inferred from the facts and circumstances proved. And where, in the prosecution of the secretary of a building and loan association for embezzling the funds of the association, the evidence showed that defendant resided in the county where the information alleged the crime to have been committed, that the business of the association was transacted in that county, and that various payments of money made to defendant for which he failed to account, were paid to him in that county, the jury were warranted in finding that the offense was committed in such county.

8. EMBEZZLEMENT: By Secretary of Building and Loan Association: Sufficiency of Evidence. Evidence *held* sufficient to support the verdict finding defendant—the secretary of a building and loan association—guilty of embezzling funds belonging to such association.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*L. A. Chapman* and *Scott J. Miller* for appellant.

(1) Defendant was charged with taking a specific amount upon a specific day from an incorporated company, being charged under the general embezzlement act. It should not have been permissible to offer evidence of smaller amounts for any other reason than to characterize the taking of the specific amount set forth in the information. (2) Defendant, by the in-

formation, was charged with being a secretary of a building and loan association; he could not be prosecuted under the special statute of embezzlement, but must be prosecuted under the special statute controlling building and loan associations, which provides ample punishment. Sec 1374, R. S. 1899. (3) Instruction No. 2 is specifically condemned in the case of State v. Harmon, 106 Mo. 637. (4) The verdict does not respond to the charge in the indictment. (5) The court erred in permitting Davis's testimony, he being an attorney in the case in connection with the prosecuting witness. The court should have instructed on all grades of crime, and instructions should have been given permitting the jury to find defendant guilty of a misdemeanor under the law. Sec. 1374, R. S. 1899. (6) There is no venue proved.

*Herbert S. Hadley*, Attorney-General, and *Rush C. Lake*, Assistant Attorney-General, for the state; *B. B. Gill & Son*, and *J. M. Davis & Sons* of counsel.

(1) This prosecution being for embezzlement and defendant being in the continuous receipt of money belonging to the corporation, of which he was an officer, the State was entitled to show all items of defalcation occurring during the time covered by the Statute of Limitations and should not have been confined to the date and amounts set forth in the information. State v. Pratt, 98 Mo. 491; State v. Noland, 111 Mo. 501; State v. Wise, 186 Mo. 48; State v. Wissing, 187 Mo. 96. (2) Section 1374, Revised Statutes 1899, does not repeal by implication section 1912, Revised Statutes 1899, and does not provide a penalty for an officer of a corporation who, with a fraudulent intent, converts to his own use the funds of the corporation, but only provides a penalty against one who shall "use or dispose of," etc., without a fraudulent intent. Each section provides a punishment for a different offense. State

v. Clarkson, 59 Mo. 152; State v. Noland, 111 Mo. 501. Section 1374 and section 1912 can be read together without contradiction or repugnancy, and when this can be done, they should be read together and effect given to both. State ex rel. v. Spencer, 164 Mo. 54. (3) Defendant having asked his instruction 7, by which the jury were told that if some person, other than defendant, took the money of the association without his knowledge and consent, they should find the defendant not guilty, the State was then entitled to the converse of this proposition, i. e., that if another took it with his knowledge and consent and with the necessary fraudulent intention on the part of defendant, they should find him guilty. State v. Rutherford, 152 Mo. 124. (4) Instruction 2, given at the request of the State, is an exact counterpart of instruction 2 in State v. Lipscomb, 160 Mo. 133. (5) There was but one count in the information. It charged the defendant with embezzlement. The verdict of the jury found the defendant guilty as charged in the information and assessed his punishment. This was sufficient. State v. Ray, 53 Mo. 345; State v. Noland, 111 Mo. 473; State v. Cook, 58 Mo. 545; State v. Walker, 24 Mo. App. 680.

FOX, J.—This cause is here upon appeal by the defendant from a judgment of conviction in the Livingston Circuit Court at its May term, 1905, upon an information filed by the prosecuting attorney charging the defendant with the embezzlement of money belonging to the Farmer's Loan and Building Association, a corporation incorporated under the laws of the State of Missouri in 1887, and doing business in Chillicothe, Livingston county, Missouri, at the time of the trial. This prosecution and judgment is predicated upon the following information by the prosecuting attorney; omitting formal parts, it is as follows:

"Comes now Frank S. Miller, prosecuting attorney within and for the county of Livingston, State of

Missouri, and informs the court on his official oath that A. P. Shour, on or about the 29th day of December, 1903, at the said county of Livingston, State of Missouri, being then and there an officer, to-wit, secretary of the Farmer's Loan and Building Association, a corporation duly incorporated, organized and having an office in the city of Chillicothe, Missouri, and doing business under and by virtue of the laws of the State of Missouri, the said A. P. Shour not being then and there a person under the age of sixteen years, did then and there by virtue of such office as secretary aforesaid, have, receive and take into possession and under his care a certain sum of money, to-wit, one hundred dollars lawful money of the United States of the value of one hundred dollars, which said money and property then and there belonged to and was the property and money of the Farmer's Loan and Building Association, and the said A. P. Shour, the said money and property, did then and there unlawfully, fraudulently and feloniously embezzle and convert to his own use without the assent of the said Farmers' Loan and Building Association, the owner of the said money and property aforesaid, and the said A. P. Shour, the money and property aforesaid, in the manner and by the means aforesaid, did unlawfully, fraudulently and feloniously steal, take and carry away, against the peace and dignity of the State.''

The testimony upon the trial on the part of the State developed substantially about this state of facts: That it was the duty of the secretary, made so by the constitution of the association, to receive the monthly dues of the stockholders on their shares of stock and all other money paid to the association and pay the same over to the treasurer of the association. It had, however, been the custom of the association, through its board of directors, for a long time prior and at the time of the filing of the information in this case, to require the secretary to deposit the money collected by him

from all sources in the bank with which the association kept its bank account to the credit of the Farmers' Loan and Building Association. When the money of the association was deposited with the bank it could only be paid out by order of the board of directors by a warrant drawn on the treasurer, signed by the president of the board and attested by the secretary. Under this method no officer of the association except the secretary received, collected or handled the money, belonging to the company, prior to its being deposited in the bank. The defendant had in the office for a number of years, and at the time he was charged with embezzlement, a lady who acted as his private clerk. This clerk had authority from the defendant to sign his name to receipts for money on the stockholders' pass books for monthly dues paid by them to the secretary; also to endorse checks made payable to the order of the defendant as secretary. This clerk assisted the defendant in keeping the books of the association and in making out monthly reports to the board of directors. These reports were made monthly and purported to contain a statement of all moneys collected and paid out during the current month. The clerk also assisted in making out the semiannual sworn statement required by the law to be made to the State Supervisor of Building and Loan Associations.

The board furnished the secretary an office and paid him an annual salary of $250. There was in the office of the secretary a large safe belonging to the association. This safe had a combination lock and on the inside was a drawer with a lock. The defendant, alone, knew the combination and carried the key to the inside drawer. In this safe the books and papers of the association were kept. The method of receiving money from stockholders for monthly dues and from other sources was practically as follows: When a stockholder brought in his pass book to pay his dues, either the defendant or his clerk would receive the mon-

ey and write in the pass book the amount paid opposite the month or months paid for and opposite this credit the name of the secretary. If the stockholder did not have his book and desired to pay his monthly dues the clerk or the defendant would give a receipt to the party paying for the amount paid. The money thus received from day to day was supposed to be put in the inside drawer of the safe by the one who received it, if the safe was unlocked. In the evening of each day, if there had been any considerable amount of money paid in, it was supposed to be taken to the bank and deposited to the credit of the association. If the money received during the day was not charged against the secretary on the cash book for any reason, then a slip was supposed to be made stating the amount paid, by whom, on what account, and date. If the amount evidenced by these slips was not entered on the cash book during the day, then the clerk, if the safe was unlocked, would put the slips in the small drawer in the safe and they would remain there until the amounts were charged to the secretary on the cash book when they were destroyed. If one of these slips was lost or destroyed before the amount was charged to the secretary on the book of first entry, the cash book, then the association received no credit for that amount, nor was the secretary charged with the money. And the only evidence that this particular amount had been paid to the secretary or his clerk was the stockholders' pass book, who had paid the money. The defendant made the monthly statements to the board of directors. This was done by getting the amount on deposit in the bank on the evening of the day the report was to be made, taking the amounts received and paid out as entered on the cash book up to the date the report was to be made and the money in the safe and the amounts evidenced by any slips in the drawer, if these amounts had not already been charged to the secretary on the cash book. The secretary credited himself for the money paid out in

his report, and the difference between the amount of
money paid out and the amount received would be the
amount the secretary was supposed to account to the
association for the current month. These monthly re-
ports were signed by the secretary and read by him
to the board of directors at the regular monthly meet-
ings. Some few months before the defendant was ar-
rested, the board appointed a special committee to go
over the books and accounts, of the secretary. This
committee reported back to the board about the 14th
day of December, 1903, and showed a large discrepancy
in the accounts of defendant with association and show-
ed his books many hundred dollars out of balance. The
defendant, upon being confronted with the report of
this committee, claimed to the board of directors that
it was an error in the auditing committee, claiming that
the auditing committee did not understand his books;
that the report was not correct and if given time by the
board he would explain the matter to the satisfaction of
the board. The board gave him time, but he failed to
make any explanation. When his attention was again
called to the matter by the board, he excused himself
by claiming to be sick and stated that he would not be
satisfied until an expert was sent by the State Building
and Loan Supervisor to go over the books. The board
of directors caused this to be done, and Mr. L. U. Craw-
ford went over the books and accounts and pass books
of the stockholders and reported a shortage in the
secretary's accounts of $9,113.15 between January,
1899, and January 20, 1904, of which $6,268.93 was
during the period of time beginning on the 1st day of
July, 1901, and ends on the 20th day of January, 1904,
when defendant ceased to be the secretary. The trans-
action known in the evidence as the W. B. Leach matter
occurred about two weeks after the report of the audit-
ing committee, December 29, 1903. At this date Mr.
Leach surrendered his shares of stock and took up two

notes he owed the association. In this transaction the defendant failed to charge himself or account for $100 of the money, being the principal of one of the notes paid by Leach, and which he received from Mr. Leach.

Under the by-laws of the association, it was the duty of the defendant, as secretary, at each monthly meeting of the board of directors to make to the board a report, in writing, showing receipts and expenditures, and when notes had been paid to so state in his report, giving their number and name of payer. At the next meeting of the board, after the Leach transaction, defendant was present at the meeting of the board of directors in person and made and read the report of the secretary of the board. This meeting was held five days after the note was paid, i. e., on January 4, 1904. In that report defendant reported that Leach had paid one of his notes, the one the amount of which he accounted for, but all reference to the note of $100 was omitted from that report. Defendant testified that he received this $100, but that it was paid to him by Leach in the office of the association, defendant's office, in Chillicothe, and that, while he had received it, he had not accounted for the same to the association. The cash showed that defendant was first charged with the $100, but that it had afterwards been erased and not included in the footings of the cash book. These entries in the cash book were not made by the defendant but by his private secretary or clerk.

The pass books of numerous stockholders were in evidence showing the defendant's receipts, in his own handwriting, for money paid him, varying from $1 up. These various amounts were shown to have been paid to him within three years prior to the 3rd day of June, 1904. The evidence tended to show that these various items had not been accounted for by the secretary to the association. The witness, DeWitt, resided at Humphrey, Missouri. He had, in letters addressed to defendant at Chillicothe, in September and

October, 1903, remitted to defendant, as secretary, dues
to the association for J. M. Stringer, a stockholder in
the association, two checks, each for $32.70. These, the
evidence showed, were received and cashed at Chilli-
cothe, but defendant had not accounted to the associa-
tion therefor. Dr. Henderson, the president of the as-
sociation, had paid defendant, in Chillicothe, Missouri,
in person, a check for $70 for dues from one Frank
Missman, a stockholder. This money defendant tes-
tified was paid to him and that he had not accounted
to the association therefor. The evidence showed the
receipt of the money in Chillicothe, the cashing of the
check there, and his failure then to account for or pay
over the same to the association.

The books and the reports made by the secretary
were offered in evidence by the State and showed many
erasures and interlineations. The defendant was an
expert book-keeper, was thoroughly familiar with the
books of the association and with every detail of its
business, and had had many years experience in keep-
ing books of account and public records.

Defendant was tried on an amended information,
the original being filed June 3, 1904, the amended one
on September 26, 1904, which is herein set forth. The
testimony for the State covered a period of three years
—between the 1st day of July, 1901, and the 20th
day of January, 1904, when defendant's connec-
tion with the association ceased. The evidence
tended to show that the defendant, between these dates,
had collected money amounting to several thousand
dollars belonging to the corporation and had failed to
account for it as secretary of this association.

The testimony on the part of the defendant tended
to show that the private clerk or secretary, Miss Wes-
ton, had access to the funds of the building and loan as-
sociation, as well as the defendant; however, Miss
Weston testified that she did not convert or take any
part of the funds of the association and that she ac-

counted for and turned over to defendant all that she received. The defendant testified in his own behalf, but his testimony fails to make a satisfactory explanation of the discrepancies in the books which were directly under his control and supervision, and his testimony in substance amounts to a denial of the conversion or taking of any of the money of the association. He simply states that he turned it over to the bank.

At the close of the evidence the court fully instructed the jury upon every phase of this case to which the testimony was applicable. It is not essential that we here reproduce all the instructions given in the cause, but will only insert those that are challenged and assigned as error in the brief of counsel, which embrace only instructions 1 and 2 given for the State, which are as follows:

"1. The court instructs the jury that if they believe and find from the evidence beyond a reasonable doubt that the Farmers' Loan and Building Association was, prior to June 3, 1904, an incorporated association doing business in the State of Missouri, and that the defendant was its secretary; that there came into his possession or under his care and control, by virtue of his office as such secretary, money belonging to the said association, and that at any time within three years prior to June 3, 1904, in the county of Livingston, State of Missouri, the said defendant, while over the age of sixteen years, did then and there, by virtue of his office as said secretary of said association, have, receive and take into his possession or under his care and control, money belonging to the said Farmers' Loan and Building Association, and that the defendant, or another with his knowledge and consent, did then and there fraudulently convert to his own or such other person's use, thirty dollars, or more, of the said money belonging to the said Farmers' Loan and Building Association, which came into his care and under his control by virtue of his being the secretary of said Farm-

ers' Loan and Building Association, with the fraudulent intention then and there on the part of the defendant to convert the said money to his own or such other person's use without the assent of the said Farmer's Loan and Building Association, you should find the defendant guilty of embezzlement, as he stands charged in the information, and assess his punishment at imprisonment in the penitentiary for a term of not less than two or more than five years.

"2. The court instructs the jury that it is not necessary in this case, in order to find the defendant guilty of embezzlement of thirty dollars or more, for the State to prove that the amount of thirty dollars was taken at the same time or on the same day. Therefore, if the jury believe from the evidence that the defendant formed the design to embezzle and convert money of the said Farmers' Loan and Building Association and that, in the pursuance of such formed design, he did, within three years next before the filing of the information, fraudulently embezzle and convert to his own use money belonging to the said Farmers' Loan and Building Association, to the amount of thirty dollars or more, then that is sufficient."

The court submitted the cause upon the instructions and evidence and the jury returned a verdict of guilty, assessing the defendant's punishment at imprisonment in the penitentiary for a term of two years. Motions for new trial and in arrest of judgment were duly filed and by the court overruled, and judgment in accordance with the verdict was entered of record by the court. From this judgment the defendant in proper time and due form prosecuted his appeal to this court and the record is now before us for consideration.

OPINION.

The record in this cause presents numerous complaints of error on the part of the trial court in its dis-

position of this case. We will give the assignments of error in the order indicated by the brief of counsel such attention and consideration as their importance merits and demands.

I. It is insisted by appellant that he is charged in the information with embezzlement of a specific sum of money upon a certain day from an incorporated company; hence the court committed error in permitting the State to show all the transactions of the defendant as secretary of the loan association and the receipt of different smaller amounts than that charged at various times during the period of three years prior to the filing of the information.

The rule of law as applicable to this proposition is no longer an open question in this State; it is clearly and correctly stated in the case of State v. Pratt, 98 Mo. l. c. 491, in which it was held that "where the offense of embezzlement is committed by a trusted servant, agent, clerk, etc., and where, as here, the abstraction occurred daily or whenever cupidity prompts, it is an impossible thing to describe the identical money taken or the precise date upon which it was taken; and it was this impossibility which occasioned the enactment of section 1817, supra [now sec. 2531, R. S. 1899], which was borrowed from an English statute, and for a similar reason, section 1821, Revised Statutes 1879 [now sec. 2535, R. S. 1899] was passed." The law as announced in that case has met the approval of this court in the recent cases of State v. Wise, 186 Mo. 42; State v. Wissing, 187 Mo. 96. The testimony in the Wise case tended to prove the receipt by defendant of money at different dates, which amount aggregated the sum charged to have been embezzled in the information. It was expressly ruled in that case that the defendant, who was the secretary of a benevolent organization, notwithstanding he had received the amounts of money at different dates during his term of office, was in default for the whole sum, and that the substantive charge of

embezzlement was supported by proof of the receipt at different dates of the amount he was charged to have embezzled and one conversion of the whole. In the Wissing case it was said by this court that "where there is but one count in an information, the charge being that defendant within three years next preceding the filing of the information embezzled a certain sum of money of the Crocker-Wheeler Company, a corporation, etc., the charge is sustained by proving the embezzlement by him of any such sum or portion thereof, as set forth in the instructions, within the time limited by statute." It follows from the law as announced in these cases that there was no error in the admission of the testimony complained of by the appellant in his first contention.

II. It is earnestly urged by counsel for appellant that if the defendant was guilty of any offense it was a misdemeanor as provided by section 1374, Revised Statutes 1899, and that that section provides the only punishment for the crime of which defendant is charged in the information.

Section 1374 may be found under article 10 of the revision of 1899, entitled "Mutual Saving Fund, Building and Loan Associations." It provides: "Any officer, director, trustee, attorney, agent or servant of any association, heretofore or hereafter to be incorporated, who shall use or dispose of any part of the moneys, property, assets or funds of such association, or assign, transfer, cancel, deliver up or acknowledge satisfaction of any bond, mortgage or other written instrument belonging to such association, unless duly authorized, or otherwise than in the regular and legitimate business of the corporation, or who shall be guilty of any fraud in the performance of his duties, shall be liable civilly to the corporation, and also to any other party injured, to the extent of the damage thereby caused, and shall also be deemed guilty of a misdemeanor."

The information and judgment in this cause is predicated upon section 1912, Revised Statutes 1899, which provides that "if any agent, clerk, apprentice, servant or collector of any private person, or of any copartnership, except persons so employed under the age of sixteen years, or if any officer, agent, clerk, servant or collector of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make way with or secrete, with intent to embezzle or convert to his own use, without the assent of the master or employer, any money, goods, rights in action, or valuable security or effects whatever, belonging to any other person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or the value of the article so embezzled, taken or secreted."

Upon this proposition, will say that we are unable to give our assent to the contention of the appellant that section 1374 defines the only offense and provides the only punishment for the embezzlement of funds by an officer of a building and loan association. A careful analysis of the provisions of the two sections, 1374 and 1912, makes it manifest that they are leveled at separate and distinct classes of criminal wrongs committed by an officer of such association. It is apparent that section 1374 is simply designed to regulate the conduct of the officers in the use and management of the funds belonging to the association; in other words, that the funds belonging to the association shall be used or disposed of only for the purposes contemplated by the constitution and by-laws of the association, and if the officer undertakes to divert the money from its proper channel and uses or disposes of it in any manner not duly authorized, or otherwise than in the regular and legitimate business of the corporation or association, he shall be deemed guilty of a misdemeanor. It is clear

that the essential elements of the offenses created by sections 1912 and 1374 are entirely different.

Under section 1912 one of the essential elements of the offense is the fraudulent intent, and it is necessary to show a conversion of the fund belonging to the corporation and at the time of such conversion the fraudulent or unlawful intention of the officer in charge of such fund to convert the same to his own use. Under section 1374 no such criminal intention is an essential element in the commission of the offense provided by that section. Under section 1374 the officer may use or dispose of some of the money of the association and yet there may be an entire absence of that unlawful and fraudulent or criminal intent necessary to constitute embezzlement under the provisions of section 1912. Section 1374 by no means undertakes to punish an officer or trustee or agent of the building and loan association for the commission of the crime of embezzlement, but simply undertakes to regulate the conduct of the officers in respect to the assets of the association, and to prevent what has been too much of a common practice of officers using a trust fund, not with that criminal intent of permanently converting it to their own use, but simply to meet some immediate emergency, and with a full intention, at the time of using it, of replacing it.

Counsel for appellant, in support of the contention so earnestly urged upon this proposition, direct our attention to the case of State v. Bittinger, 55 Mo. 596. That case is clearly distinguishable from the contention as urged by counsel for appellant in respect to section 1374. The prosecution in that case originated under an act of the General Assembly of the State of Missouri entitled, ''An Act to Establish an Insane Asylum in the Northwest or Southwest portion of the State, to be called the Northwest or Southwest Insane Asylum,'' approved March, 1872. It must be noted that that case had special reference to the establishment of an insane

asylum in a certain portion of the State, and it under-
took in the same act by section 25 to protect all dona-
tions and appropriations for such asylum by providing
a remedy against any person who refused after demand
to pay over or deliver to the commissioners or mana-
gers of such asylum any money, property or thing be-
longing thereto, then makes it a misdemeanor for any
person to convert to his own use any of the funds or
property belonging to such asylum. It must not be
overlooked that this legislation was especially directed
to a particular asylum, and having created the asylum
and having pointed out the particular rights to which
it was entitled, and specially providing remedies for the
enforcement of such rights, it is manifest that the court
in that case was clearly right in holding that, for the
enforcement and protection of the rights provided by
the statute, in which remedies were specially provided,
those remedies designated by the statute must be pur-
sued to the exclusion of all others. Now, on the other
hand, take section 1374, which counsel for appellant con-
tend is the only provision upon which this prosecution
can rest, and it is manifest that such section is not di-
rected to any special or particular building and loan
association in this State, but is found under article 10,
which is a general provision for the incorporation of
Mutual Saving Fund, Building and Loan Associations,
and is applicable to each and every association in the
various counties in this State which may be incorpor-
ated under such article. It has no special application
(similar to the law establishing the asylum referred to
in the Bittinger case), to any particular association
but was simply a provision made, as heretofore stated,
for the regulation of the conduct of the officers in the
management of the assets of such associations.

It is fundamental that, if two statutes can be read
together without contradiction, repugnancy, absurdity
or unreasonableness, it should be so done and effect
given to both. [State ex rel. v. Spencer, 164 Mo. l. c.

54, and cases cited; State v. Green, 87 Mo. l. c. 587; State v. Noland, 111 Mo. l. c. 484.]

There is no contradiction, repugnancy, absurdity, nor is there any unreasonableness in section 1912 and section 1374 standing together. Their provisions are leveled against essentially a different class of wrongs committed by officers of a corporation or an association; hence, it must be held that a prosecution for embezzlement against a secretary of a building and loan association can be predicated upon the provisions of section 1912.

III. It is next insisted that the trial court erroneously declared the law by its instruction No. 1 given for the State. This instruction is reproduced in full in the statement of this cause and the challenge to its correctness is directed solely to that part of the instruction which says, "and that defendant, or another with his knowledge and consent, did then and there fraudulently convert to his own or such other person's use, thirty dollars, or more, of the said money belonging to the said Farmers' Loan and Building Association, which came into his care and under his control by virtue of his being the secretary of said Farmers' Loan and Building Association, with the fraudulent intention then and there on the part of the defendant to convert the said money to his own or such other person's use without the assent of the said Farmers' Loan and Building Association." There was no error in giving this instruction. It was evidently intended to simply state the converse of the proposition announced in defendant's instruction No. 7, where the jury were told that "if they found from the evidence that some person other than the defendant took the money of the association charged to the defendant, without his knowledge and consent, then you cannot find the defendant guilty of embezzling such money or funds."

The testimony in this case indicates that but two

persons had access to the funds of this association, one the defendant, the other his private clerk. It certainly would be a humiliating confession upon our criminal jurisprudence if the defendant in this case permitted his clerk or some other person, with his knowledge and consent, to convert this money to such other person's use, with the fraudulent intention on the part of the defendant that it should be converted and that the association should be deprived thereof, that he could not be convicted of the offense of embezzlement. It was for the purpose of meeting just such cases that the lawmakers of this State enacted section 2364, Revised Statutes 1899, which provides: "Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as a principal in the first degree."

In the case of Mills v. State, 53 Neb. l. c. 271, it was expressly ruled by the Supreme Court of Nebraska, upon a charge of embezzlement, "that in proof of these charges it might be shown that the money was also converted to the use of another party, would not be repugnant. It might be to the use or benefit of the person holding the office, and also to the benefit of another. In this there would be no inconsistency. It would be but one manner of the commission of the offense." To the same effect is Eggleston v. State, 129 Ala. 80, where it was said by that court that "if, after acquiring the possession of the money as the agent of its owner for the purpose of changing it or having it changed, he conceived the fraudulent intent to convert it to his own use or to the use of another, or he fraudulently secreted it with intent to convert it to his own use or to the use of another, he was guilty of embezzlement." In State v. Rowe, 104 Iowa 323, the Supreme Court of that State ruled that a statute which made provisions similar to

section 2364, Revised Statutes 1899, in effect provides that one who aids or abets another to commit embezzlement is himself guilty of embezzlement and shall be punished accordingly.

The defendant in this case was the secretary of the building and loan association, and by virtue of his office had charge and supervision of the books and all funds paid to said association, and if some other person converted any portion of the money or property of such association, and the defendant then and there consented to such unlawful and fraudulent conversion, we are unable to conceive under what principle of law he can escape being guilty of embezzlement. He had charge of the funds, and if he consented or authorized anyone else to unlawfully convert such funds, the act of the other person was simply nothing more nor less than his act; therefore, it follows that the ruling upon this contention must be adverse to the appellant.

IV. Complaint is made of the action of the court in giving instruction No. 3 for the State. While counsel directs his complaint to instruction No. 3, it is apparent that he meant to challenge the correctness of instruction No. 2 for the State, for instruction No. 3 is simply one upon the question of reasonable doubt and is in the usually approved form. In support of the challenge to the law as declared in instruction No. 2 by the court in this case, we are cited to the case of State v. Harmon, 106 Mo. 635. It is true in that case that a similar instruction to instruction No. 2 was given in the case at bar, however, an examination of that case will demonstrate that the court did not condemn such instruction for the reason that it was not applicable to a case of embezzlement, but it was expressly ruled in that case that all of the instructions upon the offense of embezzlement were erroneous, not for the reason, however, that they were not applicable to that offense, but for the simple reason

that all of the counts in the indictment in the Harmon case plainly charged the offense of larceny alone, and therefore the instructions authorizing the conviction of the defendant of embezzlement were erroneous. The instruction in this case complained of properly declares the law and is in harmony with the announcement of the rules of law applicable to the offense of embezzlement in State v. Wise and State v. Wissing, supra.

V. There is no merit in the error complained of by appellant that the verdict of the jury does not respond to the charge in the information. The information contained but one count and charged the offense of embezzlement in such form as has frequently met the approval of this court, and the jury responding to this charge say: "We, the jury, find the defendant guilty as charged in the information and assess his punishment at two years in the state penitentiary." The defendant was charged with embezzlement and the jury found him guilty as charged, and this was manifestly a sufficient response to the charge in the information.

VI. It is contended that the court erred in permitting A. B. Davis to testify, he being an attorney in the case, in connection with the prosecuting witness. We know of no rule of law which would preclude Mr. Davis from testifying in the case. The record discloses that his testimony was only to the fact that one of the record books of the corporation, which contained the original constitution, had been in his possession and had been mislaid or lost and after diligent search could not be found. His testimony was evidently for the purpose of laying the foundation for the introduction of secondary evidence. It had no connection with fixing the crime charged upon defendant, and so far as the disclosures of the record indicate there was no objection to his testimony, hence this complaint is without any merit whatever.

VII. It is insisted by appellant that the court should have instructed the jury to find the defendant guilty of a misdemeanor under section 1374. It is sufficient to say as to this insistence that we have fully disposed of that question under another assignment in this case.

VIII. It is next argued by appellant that the testimony fails to show any venue in this cause. It is sufficient to say upon this contention that the evidence introduced by the State was entirely sufficient to authorize the jury in finding that the offense charged was committed in Livingston county. In State v. Sanders, 106 Mo. l. c. 195, it was insisted, as it is here, that the evidence failed to prove that the offense charged was committed in Ozark county. The court, in passing upon that question, said: "It is true no witness testified directly to the fact that the assault was made in that county, but 'it is not necessary that the venue be proved by direct and positive evidence. It is sufficient if it can be reasonably inferred from the facts and circumstances proven.' [State v. Hill, 96 Mo. 358; State v. Burns, 48 Mo. 438; State v. West, 69 Mo. 404.]" To the same effect is the case of State v. Daugherty, 106 Mo. l. c. 185, where it was expressly ruled that "proof of the venue as laid in the indictment, like any other material allegation, need not be established by express and positive testimony, but it is sufficient if the circumstances in evidence tend to the conclusion, in a manner satisfactory to the jury, that the place of the crime corresponds with that set forth in the indictment." [State v. McGinniss, 74 Mo. 245, and cases cited; Commonwealth v. Costley, 118 Mass. 1; Beavers v. State, 58 Ind. 530.]

The testimony in this cause shows that the defendant resided in Livingston county; that the business of the association was transacted in that county and that various payments of money were made to him for which he failed to account, were paid to him in said county;

that the testimony in this cause was sufficient to warrant the jury in finding that the offense was committed in Livingston county, we have no doubt.

IX.  Defendant complains of error on the part of the trial court in the refusal of instructions which were requested, numbered from one to five.  It can serve no good purpose to reproduce the instructions refused and we see no necessity of burdening this opinion with. the insertion of them.  We have carefully read all of the instructions given in this cause, as well as those which were refused, and it is sufficient to say that all of the subjects embraced in the refused instructions were fairly and fully covered by those given by the court.  The instructions given by the court in this cause fully, and in a manner extremely favorable to the defendant, presented the law upon every phase of this case to which the testimony was applicable; hence, the appellant has no ground of complaint upon the subject of the presentation of the law involved in this proceeding, and there was no error in the refusal of the instructions requested by the defendant.

X.  There are numerous complaints disclosed by the record of error on the part of the trial court in the admission of testimony.  We have read in detail all of the testimony developed at the trial of this cause and it is entirely unnecessary to reproduce the questions and answers objected to by the defendant, and it is sufficient to say upon that contention that all the testimony offered to which objections were interposed was entirely competent and tended to prove some of the issues presented in the cause.

XI.  Finally, it is urged that the testimony was insufficient to support the finding and verdict of the jury.  Upon that question it is only necessary to say that if the facts as disclosed by the record now before us is insufficient to support this verdict, then we confess that the State had just as well abandon all prosecutions of offi-

cers who are charged with conversion of trust funds. The testimony introduced by the State covered the entire transactions of this defendant as secretary of this loan association during the statutory period of three years before the filing of the information. An expert accountant of the state department, connected with the supervision of building and loan associations, made an examination of the books of the defendant and found that the books were out of balance and that he was indebted to the association several thousand dollars. Another examination by competent accountants was made with a similar result. In addition to this, the testimony of numerous witnesses was introduced, showing the payment of money to the defendant which was unaccounted for upon the books or in the bank account, and the testimony as offered by the defendant fails to make a satisfactory explanation of this deficit, and when all the evidence disclosed by the record is fully considered, we see no escape from the conclusion that the finding and verdict of the jury is fully supported by the testimony introduced at the trial.

We have thus given expression to our views upon the vital questions presented by this record, which results in the conclusion that there is no reversible error, and the judgment of the trial court should be affirmed, and it is so ordered.

All concur.