# CHARLESTON.

MARIANITA TRUSCHEL *v.* THE REX AMUSEMENT COMPANY.

(No. 5687)

Submitted September 7, 1926.   Decided September 14, 1926.

1.  APPEAL AND ERROR—

    When a benign interpretation of all the evidence supports a finding in favor of demurree upon a demurrer to the evidence, such finding will not be disturbed despite lack of direct evidence on a material point. Pt. 3, Syl. *Garrett* v. *Ramsey,* 26 W. Va. 345, applied.   (p. 218.)

2.  SAME—*Where Evidence Necessary to Sustain Verdict for Plaintiff Was Erroneously Excluded on Defendant's Objec-*

*tion, Defendant Cannot Complain of Lack of Such Evidence to Sustain Verdict.*

Where evidence necessary to sustain a verdict for plaintiff has been erroneously excluded upon the objection of defendant, the defendant cannot successfully complain that the verdict is not sufficiently sustained for want of such evidence. (p. 219.)

3.  SAME—DAMAGES—*Damages in Personal Injury Case, Found by Jury, Will Not be Disturbed Unless Unsupported by Evidence or so Large as to Indicate That Jury Was Prejudiced; $18,000 for Fracture of Ankle of 23-Year-Old Woman, Requiring Treatment for 5 Months Which Would Have to be Continued for Indefinite Period, and Resulting in Possible Permanent Deformity, Was Not Excessive.*

The amount of damages found by a jury in an action for personal injuries will not be disturbed unless it is unsupported by the evidence or is so large as to indicate that the jury was prejudiced.   (p. 219.)

Error to Circuit Court, Ohio County. .

Action by Marianita Truschel against the Rex Amusement Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*John A. Howard, Wm. C. Howard* and *J. M. Ritz,* for plaintiff in error.

*O'Brien & O'Brien* for defendant in error.

HATCHER, JUDGE:

This suit was instituted in July, 1924, in the circuit court of Ohio County, to recover damages for personal injury received by the plaintiff in the Rex Theatre in the City of Wheeling.  Upon the trial of the case the defendant demurred to the evidence, the court overruled the demurrer, and upon a conditional verdict of the jury for the plaintiff, rendered a judgment of $18,000 in her favor.  Defendant prosecutes error here.

On the night of Oct. 15, 1923, the plaintiff, then aged 23 and unmarried, and several companions attended an entertainment in the Rex Theatre.  As they were descending the

stairs between the balcony and the first floor of the theatre, the plaintiff fell, breaking an ankle. One of her companions summoned a Mr. Zeppos, who carried plaintiff out to a car. When she reached home, Dr. Wilson set the fracture and put the ankle in a cast. Dr. Truschel took charge of the patient the next day. For some nine weeks she was compelled to keep the ankle in an elevated position, and for weeks suffered such pain that she could not sleep without the aid of drugs. An X-Ray taken during this period showed a simple fracture of the tibia and fibula bones at the ankle. After using crutches for four or five months, and a cane for a month or two, the plaintiff was able to walk a little without support, but not without pain and swelling of the ankle. About five months after the injury, Dr. Davidse began treating the ankle electrically and with massage, in an attempt to keep it in proper position until the muscles should strengthen sufficiently to hold it, and also to prevent stiffening of the joint. At the time of the trial in Sept. 1925, these treatments were still being employed once a week. A second X-ray taken about three weeks before the trial showed the bones were healed, but with a slight displacement. The condition at the time of the trial was proved to be as follows: the arch of her foot had fallen; her ankle was stiffened and somewhat enlarged; there was a tendency to rheumatism in the foot and knee; there was some shortening of the tendons of the ankle, interfering with walking and tending to throw the foot to one side; she was compelled to wear bandages to keep the foot in place, and a support to prevent the arch from falling; she was unable to walk for any distance without great pain and swelling of the ankle, and could not engage in sports and pastimes, such as swimming, dancing, tennis and hiking, as had been her wont before the injury. Dr. Davidse declared that he could not at the time say whether or not the injury would be permanent; that with constant treatment it might be worked out in years, but ''no man could say''; and that the patient was making ''beautiful progress''. Dr. Truschel supported his testimony.

The defendant alleges error to the trial court in (1) Overruling its demurrer to the evidence, and (2) In refusing to set aside the verdict.

(1) The main contention of defendant under its first assignment of error is that the plaintiff did not prove that the defendant was operating the Rex Theatre at the time of the injury.

Evidence was adduced that the defendant was chartered to operate, etc., theatres; that its president in 1921 was George Zeppos; that at the date of the injury a Mr. Zeppos was an officer of defendant; that he operated the Rex Theatre; and that he carried plaintiff from the theatre following her accident.

Upon the demurrer of defendant to the evidence, the evidence of plaintiff must be "interpreted most benignly" in her favor, and she must be given the benefit of all inferences that can be fairly deduced from her evidence. *Garrett* v. *Ramsey,* 26 W. Va. 345; *Talbott* v. *Ry Co.,* 42 W. Va. 560. When we consider that the purpose of defendant was to operate theatres and that the building in which plaintiff was injured was not only a theatre, but bore in part the same name as defendant; that George Zeppos was president of defendant in 1921 and that a Mr. Zeppos was an officer of defendant, operating, and present in, the Rex Theatre at the time of plaintiff's injury, we cannot say that a benign interpretation of these facts does not warrant the finding that the defendant was operating the Rex Theatre at the time of the accident. Further consideration of this proposition will be had in connection with defendant's next point, which is that there is no evidence showing knowledge by defendant of the alleged defect in the carpet.

The plaintiff offered to prove by a Mrs. Whitehead that early in Oct. of 1923 she and her husband attended a performance at the Rex Theatre "operated by defendant company", that they came out of the theatre on the same stairway upon which plaintiff was injured, that the carpet thereon was then loose and "bulged over" one of the steps, causing Mrs. Whitehead to fall, and that Mr. Whitehead called the atten-

tion of the proprietor and employees of the Rex Theatre to the looseness of the carpet but that this defect had not been remedied. Counsel for defendant objected to the offer, and the objection was sustained.

It is a settled rule of law that on appeal, a party will not be permitted to take advantage of an error which he induced. *Harris* v. *North,* 78 W. Va. 76 (81) ; *Comer* v. *Lbr. Co.,* 59 W. Va. 688; *Vance* v. *Evans,* 11 W. Va. 342; *Cambron* v. *St.,* (Ind.) 133 N. E. 498; 19 L. R. A. 623 (626) ; 4 C. J. 700; 2 Stand. Ency. Pro. 431; 2 R. C. L. 238-9 The defendant does not dispute the rule, but contends that, as applied to this case, it simply means the defendant can not allege in this court that the lower court erred in rejecting the proffered testimony of Mrs. Whitehead. Counsel further contend ''since the court did not permit the evidence to go in there was nothing to explain or contradict. There was a total absence of proof on this point. * * * The defendant demurred to the evidence that the court permitted to go in, not to the evidence the court rejected. * * * Because of absence of this proof defendant demurred to the plaintiff's evidence. * * * No court has gone to the extent of supplying or excusing proof of a material fact. If the court is of opinion that it was error to reject the evidence of the Whiteheads, it ought to award a new trial and give the plaintiff an opportunity to make proof on this material point. That is the utmost the court should do.'' This argument is ingenious, but counsel have failed to apply fully the law of estoppel. The excluded testimony was competent and material. It would have tended to proved the ownership of the theatre by defendant. It would have established *prima facie* that defendant had notice of the defect in the carpet. The trial court erred in rejecting that evidence. The error was induced by defendant. It is true that this court will not supply the excluded proof, but the law requires this court to ignore the complaint of defendant that the plaintiff failed to prove the facts which the excluded evidence would have established. ''When a plaintiff offers competent evidence to prove a material fact in issue, which is erroneously excluded by the court on objection of defendant, the defendant

will not be permitted to urge on appeal, as a ground for reversal, that the plaintiff failed to prove the fact which such evidence would have established." *Missouri etc. Ry. Co.* v. *Elliot,* 102 Fed. 96. "Appellant can not be allowed to procure an erroneous ruling in his favor, and exclude competent and material evidence on the trial when it is offered and ready to be produced, and then on appeal insist that for want of that very proof the decree can not be sustained. A party will never be allowed to so take advantage of his own wrong, or the errors of the court induced on his motion, and then compel the opposite party to suffer the consequences. Such a proceeding would be the merest trifling with the court." *Jobbins* v. *Gray,* 34 Ill. App. 208 (219). To the same effect are *Thompson* v. *McKay,* 41 Cal. 221; *Lincoln Co.* v. *Ry. Co.,* 77 Neb. 99; *Sachs* v. *Am. Surety Co.,* 72 N. Y. App. 60; *Union Pac. Ry. Co.* v. *Harris,* 63 Fed. 800; *Sours* v. *Ry. Co.,* 81 Minn. 337; *White* v. *Moffatt,* 108 Ark. 490; Bigelow on Estoppel, 6th Ed. 787; Elliott App. Pro. par. 630; 2 Ency. Pl. & Pro. 522-3; 4 C. J. 706, par. 2617.

Defendant contends that it should be awarded a new trial so that it may have the opportunity to rebut the proffered Whitehead evidence. Otherwise, it claims, it will be deprived of its property without due process of law under the Fourteenth Amendment to the Federal Constitution. The Federal Court has said that a precise definition of due process of law has never been attempted, that no fixed procedure is demanded, but that "Its fundamental requirement is an opportunity for a hearing and defense." *Ballard* v. *Hunter,* 204 U. S. 241, (255). "Law, in its regular course of administration through courts of justice is due process." *Caldwell* v. *Texas,* 137 U. S. 692 (697). Mr. Justice WHITE said that all the requirements of the Fourteenth Amendment are complied with, provided there is sufficient notice and adequate opportunity to defend. *L. & N. Rr.* v. *Schmidt,* 177 U. S. 230 (236). There is no claim in this case of insufficient notice. The defendant had full opportunity to present its defence at the trial in the court below. Instead of offering proof it elected to rest

its case upon a demurrer to the plaintiff's evidence. An established rule of that practice is that the party who prevails on the demurrer is entitled to final judgment in his favor. Elliot Genl. Practice, par 855; *Golden* v. *Knowles,* 120 Mass. 336; *Thornton* v. *Bank,* 3 Peters 36. A demurrer to the evidence is a practice which has been used in and sanctioned by the courts of West Virginia ever since the formation of the state. Its history may be traced through scores of cases in the Virginia courts, back to the old English decisions. See the cases collected in *Trent* v. *Rr. Co.,* 23 Gratt. 619. The leading English case on a demurrer to the evidence, *Gibson* v. *Hunter,* 2 Henry Blackstone 187, was cited and followed by the U. S. Supreme Court in 1824 in *Fowle* v. *Alexandria,* 11 Wheat. 320 (322). That procedure has been preserved in the Federal courts and in all the state courts, except where superseded by the simpler and less decisive practice of ordering a nonsuit or directing a verdict. No court has ever held that judgment on a demurrer to the evidence infringed upon a constitutional right. *Hopkins* v. *Rr. Co.,* 96 Tenn. 409 (431). An eminent author praises this procedure as "an ancient and well established one, having a firm support in principle." Elliott, *supra,* par. 855.

The defendant has had an impartial hearing upon every issue it has raised. The utmost consideration has been given to the arguments advanced in its behalf. The decision in this case is based on settled principles of law. The judgment against it is the result of an established practice,—a practice which it voluntarily invoked for the express purpose of securing a judgment against its adversary. We cannot see that because the judgment is adverse instead of favorable to defendant, it has been deprived of due process of law. *Duane* v. *Stamp Co.,* 231 Mass. 113 (127-8). This contention of defendant rests on *Saunders* v. *Shaw,* 244 U. S. 317. In that case the judgment of a state court in favor of plaintiff was reversed on the theory that "the defendant was not bound to go on and offer evidence that he contended was inadmissible in order to rebut the testimony already ruled to be inadmissible in accordance with his view", and that, because the case

was decided against him without opportunity to present evidence rebutting the proffered evidence of plaintiff, he had been denied due process of law. The rules of procedure applied herein were apparently not raised or considered in *Saunders* v. *Shaw;* they were certainly not discussed or referred to in the opinion. We cannot conceive that the Supreme Court intended in that case to uproot principles so deeply grounded in our system of jurisprudence. We therefore regard *Saunders* v. *Shaw,* as an exceptional case.

The defendant seems to labor under the impression that the plaintiff's case depends on proof that defendant had notice of the defect in the carpet. It has failed to apply however, the doctrine of *res ipsa loquitur*.

The defendant is not an insurer of the safety of its patrons, but the law does impose on it the duty to use ordinary care to make its theatre reasonably safe. *Andre* v. *Mertens,* 88 N. J. L. 26. The evidence for plaintiff shows that the carpet was loose and extended over the edge of a step, on a stairway, at a place under the defendant's control, and that this defect caused the accident. This occurrence was one that would not take place in the ordinary management of a theatre if reasonable care were used. We are of opinion that the circumstances immediately attending plaintiff's injury, in the absence of explanation by the defendant, afford sufficient evidence that the injury was occasioned by want of ordinary care to keep the stairway reasonably safe. It was not necessary for the plaintiff to show that defendant knew of the defect. The plaintiff's case was therefore sufficiently sustained without the testimony of the Whiteheads. *Jankey* v. *Gas Co.,* 98 W.ᐧ Va. 412 (417) ; *Breen* v. *Rr. Co.,* 109 N. Y. 297; *Sharpless* v. *Pantages,* 178 Cal. 122 (124).

Defendant also alleges a variation in the allegation and proof of negligence. The declaration alleges that the defendant carelessly permitted the carpet on its stairway to become loose, and that plaintiff's fall was caused by such looseness. In her testimony plaintiff describes her fall as follows: ''I stepped and it seemed like my foot just shot off the carpet, the carpet seemed like it extended right over the step and

bulged a little, and when I stepped it turned my foot down this way, and my foot shot off", and "Well, my explanation would be that the carpet had worked loose out over the edge of the step, the carpet extended beyond the step, the edge, nothing under the edge to step on." This testimony shows that her fall was occasioned by the loose carpet. We therefore see no force in this charge of error.

(2)    Under the second assignment of error the defendant contends that the verdict should have been set aside because (a) The verdict is grossly excessive, (b) The jury was permitted to consider evidence that no handrail was on the stairway at the time of the injury, and (c) "The plaintiff improperly and unlawfully, by an unresponsive answer to a question in cross-examination, brought before the jury the fact that the defendant had liability insurance".

The evidence shows that for many weeks following the injury the plaintiff suffered much pain; that at the time of the trial she could not use her foot at all without a support; that walking even a short distance caused pain and swelling in her ankle; that she was unable to take part in any pleasurable exercise or in fact do anything that required the use of her foot; that for five months she had been treated continuously, and that the treatments would have to be continued for an indefinite period; and that for a long time following the trial she was likely to have an enlarged ankle joint, with weakness and a possible permanent deformity. In fact none of the expert witnesses would commit himself as to the time required for her cure or that her ankle would ever become normal again. The amount of damages is ordinarily for the jury and we are not prepared to say under all the facts in this case, that $18,000 is so out of proportion to the pain and injury suffered by plaintiff as to indicate prejudice or partiality by the jury.

The jury was taken to view the place of the accident before hearing the evidence. At that time there was a handrail on the stairway. The plaintiff, in explaining her fall, stated that there was no handrail there at the time of her injury. The jury was entitled to know the condition of the stairway

as it existed when the plaintiff was injured, and this evidence was proper for that purpose.

The evidence as to insurance appears in answer to a question as to what plaintiff told Mr. Zeppos, and is as follows: "but I afterwards told the man how I fell, that came up there, I don't know whether it was an insurance man or who it was, but he came up there and inquired how I fell". This statement hardly warrants the charge that the plaintiff brought before the jury "the fact that the defendant had liability insurance." The trial court promptly instructed the jury to disregard the statement. It was improper, but its admitted lack of information and certainty rob it of any prejudicial effect against defendant.

Finding no material error in the judgment of the lower court, it will therefore be affirmed.

*Affirmed.*