**Maude LEWIS, Plaintiff,**

v.

**W. T. GRANT COMPANY, a Corporation, Defendant.**

**Civ. A. No. 718.**

United States District Court,
S. D. West Virginia, Huntington Division.

Jan. 12, 1955.

John Jenkins, Jr., Huntington, W. Va., for plaintiff.

C. F. Bagley, Jr., L. E. Woods, Jr., and Campbell, McNeer & Woods, Huntington, W. Va., for defendant.

WATKINS, District Judge.

Plaintiff, a married woman, 63 years of age, was very seriously injured when she slipped and fell while walking in the store of W. T. Grant Company at Huntington, W. Va., to which she had come as a customer to purchase merchandise. Plaintiff produced evidence to show that on the morning of the accident, just before the store opened, and a short time before the plaintiff fell, the defendant had covered a part of its floor with a liquid substance which left the floor oily and slick and that when she stepped on the slick floor she slipped and fell. The jury awarded her a verdict of $17,172. Defendant has moved for judgment notwithstanding the verdict and for a new trial. In its brief defendant confines its argument to the motion for a new trial, contending (1) that the court erred in the admission of certain evidence; (2) that the verdict is excessive, and (3) that the court erred in questioning some of the witnesses.

There was an abundance of evidence as to negligence and the defendant does not now urge its insufficiency, relying upon the points mentioned above. However, to understand the three grounds relied upon by defendant it is necessary to review the evidence of the plaintiff, which was evidently accepted by the jury in reaching its verdict. That evidence is as follows:

Plaintiff went to the store on April 20, 1953, as a customer, entering the store at 9:30 A.M. when the store was opened for customers. She went to different parts of the store, including the second floor where she made a purchase. She was leaving the store about 10:30 A.M., walking through the east aisle on the first floor when both of her feet slipped from under her and she fell and sustained very serious injuries. On the morning of the accident, just before the store opened for business, the defendant had covered the particular portion of its floor near the east front door, at the place where plaintiff fell, with a preparation which left the floor oily and slick. The floor of the store was oak, and about

each three months a preserving material was applied to the front part of the store and in the front part of the aisles where there was most traffic. The material applied to the floor by the defendant on the morning that plaintiff fell was called acrosheen. The use of it was somewhat new to the defendant in that it had been used by defendant only once before, that being in January, about three months prior to the date of this accident. It was a liquid substance and was applied to the floor by defendant with a mop.

On the morning of the accident defendant's janitor came to the store about 8 A.M. and by the time the store opened for business at 9:30 A.M. the janitor had swept and cleaned the floor and applied the substance to the front part of the store, and to the east aisle (where plaintiff fell), back from the front of the store twelve to fifteen feet.

Shirley Smith, a window trimmer, and one Colapietro, the assistant store manager, were working in the front of the store. Shortly after 10:00 A.M., before plaintiff fell, Mabel C. Hall and Mrs. A. T. Runyon, her sister, both customers, entered the front door of the store. Mrs. Hall had only taken three to four steps inside the store when she slipped and fell upon the substance. This occurred about twenty to thirty minutes before the plaintiff fell. Mrs. Hall had polio some fifty years prior to this date and wore a brace. Although she walked with a limp she was able to do all her own housework, walk about town, do her own shopping and operate a grocery store. When Mrs. Hall fell to the floor the window trimmer, her sister, and the assistant store manager helped her get up and put her in a chair nearby. Mrs. Hall testified that there was something like oil on the top of the floor and that was what caused her foot to slip and fall. She was not sure that she could get up, and sat there in the chair while papers were being prepared by defendant's employees for her to sign. After she fell no attempt was made to mop up the substance on the floor or to block off traffic. After she fell she noticed oil on the bottom of her shoes, which had not been there before.

While Mrs. Hall was seated in the chair and the assistant store manager was filling out papers for her to sign, another customer in the store whose name is not known, slipped at approximately the same spot where plaintiff later slipped and fell, and within five or six feet from where Mrs. Hall had slipped and fallen. This occurred in the presence of the assistant store manager and the window trimmer who were standing beside Mrs. Hall and her sister, Mrs. Runyon, not more than six feet from where the unknown woman slipped. When Mrs. Runyon saw the unknown woman slip she said to the two Grant employees, "Oh, that woman there almost fell", or words to that effect. Out of an abundance of precaution this evidence as to the slipping of the unknown woman at the same spot where plaintiff later fell, and the statement of Mrs. Runyon to the store employees calling attention to the incident, was admitted for the sole purpose of showing further notice to the store employees of the dangerous condition of the floor. The incident occurred just a few minutes after Mrs. Hall had fallen.

After Mrs. Hall had fallen and the unknown woman had slipped, and while Mrs. Hall was still seated in the chair, nearby, the plaintiff came walking down the east aisle from the rear of the store toward the front of the store. No notice or warning was given to her as to the dangerous condition of the floor. When she reached a point about five or six feet from where Mrs. Hall had fallen, both of her feet slipped out from under her and she fell on her back. Mrs. Hall and Mrs. Runyon both testified that the floor was oily at the place where plaintiff fell and where she lay on the floor. Mrs. Runyon did not see the plaintiff fall because she was in the basement, but when she came up a few minutes later she saw plaintiff on the floor covered with a blanket and observed the condition of the floor at that time. The evidence showed that the plaintiff had not been moved from the place where she fell

and there is no evidence that the condition of the floor had changed. Although Mrs. Hall was seated only five or six feet away from the place where plaintiff fell she did not actually see the fall. She heard plaintiff fall and heard her scream and stood up and observed the condition of the floor. Mrs. Hall testified that where she fell the floor was as "slick as glass" and that it was "practically the same" five or six feet away where plaintiff fell.

Shirley Smith, defendant's window trimmer, testified that she was working in the front of the store when both Mrs. Hall and the plaintiff slipped and fell; that she saw the plaintiff fall; that she observed the condition of the floor at the "spot" where plaintiff fell prior to her fall and found it to be "slick"; that "something had been put on the floor to clean it or something"; that she was not concerned herself about slipping because she was wearing tennis shoes. She testified that as plaintiff came by the candy counter her right foot slipped on the floor; that she tried to grab the candy counter but failed to do so and fell to the floor; that she did not see any foreign substance on the floor such as a banana peeling or otherwise where plaintiff fell; and that she was standing beside the chair in which Mrs. Hall was seated when plaintiff fell, about four feet away from where plaintiff fell. After the plaintiff fell, they did not move her for a while but put a blanket over her until an ambulance came and she was taken to the hospital.

The first point of error assigned by the defendant relates to the admission of evidence of Mrs. Runyon that an unidentified person slipped near the spot where plaintiff fell. Defendant says that evidence of prior slipping or falling is only admissible where (1) the prior fall is at the same place, and (2) the prior fall is from the same cause, and (3) where an appreciable length of time has elapsed between the prior fall and the fall of the plaintiff to give the defendant time to remedy the condition. Defendant admits that the first requirement was met by the testimony of Mrs. Runyon—that the unidentified person slipped at approximately the same place that plaintiff fell, but denies that the second and third requirements were met.

An examination of the record shows that there is evidence that the defendant did have time to remedy the situation after receiving notice of the dangerous condition. Mrs. Hall testified that she slipped and fell on the floor and that plaintiff fell about twenty to thirty minutes later. Mrs. Runyon testified that the unidentified person slipped "just a very few minutes" after Mrs. Hall's fall. The testimony of Mrs. Hall and Mrs. Runyon shows that there was sufficient time after the unidentified person slipped and after Mrs. Runyon told the assistant store manager and window trimmer of the incident, to permit Mrs. Runyon to leave the scene of the accident, walk across the entire front of the store and go down to the basement. Mrs. Hall testified that after she had fallen no one made any effort to warn other customers of the dangerous condition or block off the area. Adequate warning could have been given within seconds because the store manager and the window trimmer were standing beside Mrs. Hall only about six feet from where the unidentified person slipped. After helping Mrs. Hall to her chair the assistant store manager seemed chiefly interested in filling out papers for Mrs. Hall to sign instead of looking out for the safety of other customers. The statement which Mrs. Runyon said she made directly to the assistant manager and the window trimmer telling of another woman slipping at approximately the same place was the clearest kind of additional notice, if any additional notice was needed, as to the dangerous condition of the floor. The assistant store manager denied that he saw an unidentified person slip or that he heard Mrs. Runyon make this statement. The evidence is undisputed that the defendant did nothing, it being the contention of the defendant that the floor was less slippery after the application of the substance than it was before

and that the floor was in a safe condition.

There is also evidence in the record as to the cause of the slipping of the unidentified person. Mrs. Hall testified that the floor at the place where plaintiff fell was very oily, and "slick as glass" (Tr. p. 112). Mrs. Runyon testified that the unidentified lady slipped at the same place where she later saw the plaintiff lying (Tr. p. 142). She said the spot was "very oily and it looked like the oil had been put on the floor but it hadn't been smoothed over", and that she could actually see the substance on the floor (Tr. p. 140). Mrs. Runyon testified that the unidentified person slipped and grabbed the counter where plaintiff fell (Tr. pp. 141, 150). Defendant cites the case of Wendell v. G. C. Murphy Co., W. Va.1952, 70 S.E.2d 252. There the floor had been waxed ten days before the fall. No one said the floor was slippery at the time of the fall. No one said the floor was oily or greasy. The only evidence was that the plaintiff fell and that afterwards there was some oil on her coat. Here five witnesses said the floor was oily and very slippery, including a former employee of the defendant. Defendant put the substance, which contained oil, on the floor within two hours before plaintiff fell. Defendant's former employee saw nothing other than the substance on the floor where Mrs. Hall, the unidentified woman and the plaintiff slipped or fell. There is not only proof of what caused the unidentified woman to fall but there is no other reasonable inference.

■ Defendant relies upon the case of Reynolds v. Grant Co., 117 W.Va. 615, 186 S.E. 603, as controlling the question of admissibility of evidence in this case. I have pointed out that all the three conditions mentioned in that case have been met by the evidence in this case. In the first place evidence may not be admissible under West Virginia law but still be admissible in this court. Fed. Rules Civ.Proc. rule 43(a), 28 U.S.C.A. This rule has liberalized the admissibility of evidence as much as possible by providing for the widest rule of admissibility whether under federal law or federal equity practice or state rule. In that case the only evidence concerning the prior fall was the extra-judicial statement of the store manager at the time of plaintiff's fall that someone had fallen there previously. The court concluded that such statement was hearsay and not admissible. The court said in 186 S.E. at page 604:

"Under our West Virginia cases, it seems clearly established that it is relevant to show in cases of this kind that some other person at a former time had fallen at the same place and from the same cause that the plaintiff fell, provided the conditions are shown not to have changed during the time intervening between the two events. Truschel v. Rex Amusement Co., 102 W.Va. 215, 136 S.E. 30. * * * Therefore, if the plaintiff here has shown by competent evidence that prior to the fall sustained by the plaintiff and on the same day another person had fallen under the same conditions and from the same cause, and that the manager of the defendant's store was apprised of the fact an appreciable length of time before the fall sustained by the plaintiff, the verdict for the defendant, in the light of the other proof, should not have been directed; otherwise, the judgment of the trial court is right."

■ In other words the court was pointing out three requirements necessary for the plaintiff to make out a prima facie case, not the requirements for the admissibility of a prior fall. This is important here because the evidence objected to relating to the slipping of an unidentified person at the same place where plaintiff fell was admitted only on the question of notice. It is my opinion that such evidence would have been competent on the question of the condition of the floor as well as the notice or knowledge thereof, if it had been so offered. 20 A.J. 282.

810

In S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, 498, Judge Hicks said that testimony that "Myco-sheen" had been applied to the floor unevenly and made "little pools", was relevant "for whatever it might be worth to the jury in determining whether appellant knew, or by the exercise of reasonable caution might have known, the condition of the floor shortly prior to appellee's injury."

In the case of Sears, Roebuck & Co. v. Copeland, 4 Cir., 110 F.2d 947, 949, Judge Soper, citing Wigmore on Evidence, 2d Ed., §§ 252 and 458, held that evidence of a prior accident tends to show the dangerous qualities of the thing or place, and knowledge of these qualities on the part of the owner or possessor. In this case the plaintiff had caught her shoe heel on a loose metal strip attached to one of the steps and had fallen. The evidence of the prior fall was held admissible even though the plaintiff failed to show that the same step was involved in both accidents.

The Supreme Court of West Virginia has pointed out that in cases of this kind there is a distinction as to knowledge or notice, between accidents resulting from some inherent defect in the construction and maintenance of the floor, and a fall caused by an extrinsic or foreign substance on the floor. In the case of Wendell v. G. C. Murphy Co., supra [70 S.E. 2d 255], it was pointed out that "if the floor is inherently defective, it is not necessary to show that the owner or lessee of the premises had actual knowledge thereof". Further the court said: "But if the fall is caused by some extrinsic or foreign substance rendering the floor slippery, it must be shown that the owner or lessee knew or had a reasonable opportunity to know that the floor was in an unsafe condition." Here the slippery condition was created by the defendant, and was not caused by some foreign substance being thrown on the floor by a customer.

Prior to the reading of the deposition of Mabel C. Hall, a witness for the plaintiff, the defendant announced to the court that there were portions of that deposition which the defendant considered inadmissible. The defendant pointed out that there were certain statements attributed to employees of the store in that deposition which should not be admitted. The court stated that it did not want to get any error into the case, and thereupon plaintiff's counsel agreed to refrain from reading that portion of the deposition of Mrs. Hall relating to statements of employees of defendant. A recess was taken and counsel eliminated that part of the Hall deposition, and the same was not read to the court or jury. The court had not previously read the Hall deposition. Following Mrs. Hall's testimony her sister Mrs. Runyon testified as a witness for plaintiff. During her testimony she told about seeing another customer whose name she did not know slip at the same place where Mrs. Hall had slipped and fallen only a few minutes previously. Mrs. Hall had fallen some four or five feet away from the spot where plaintiff fell and about twenty to thirty minutes before plaintiff fell.

During the examination of Mrs. Runyon, the following questions were asked by the court and the following answers given:

"Judge Watkins: And what was it you said?

"The Witness: I said, 'Oh, that woman is almost going to fall' or something like that.

"Judge Watkins: And what reply did these two employees, if they made any reply, what was it?

"The Witness: Well, I don't remember that there was any reply, only this girl, the window trimmer, said, 'Well, one of the girls that works here fell.'

"Mr. Bagley: Your Honor, we object to the conversation.

"Judge Watkins: I sustain that objection. I sustain that objection. At any rate you have told us what you said to them?"

Defendant says it was reversible error for the court to ask these ques-

tions. There are several answers to this contention. In the first place the witness had previously testified that she had seen this unknown person slip at approximately the same spot where plaintiff later fell; that the assistant manager and window trimmer were standing beside her and that she was about six feet away when the unknown person slipped. The court explained to the jury that this evidence as to the third person slipping and the remark made to the store employees was admissible only upon the question of notice to the defendant of the condition of the floor at the place where plaintiff fell. It will be noted that there was no objection made to the question asked by the court concerning what reply, if any, the employees made, so that the court could have withdrawn the question before answer was made if it was improper. Instead, the defendant elected to permit the answer to be made, and then objected, which objection was promptly sustained. The answer given by the witness was that there was no reply, but the witness then volunteered that the window trimmer said "one of the girls that worked here fell". Certainly the court was surprised by this answer, and it is evident that this answer was not expected by defense counsel or he would have promptly objected and prevented the answer from being made. Had objection been promptly made and had the court overruled the objection, it would not have constituted error so substantial as to require reversal, because the evidence was at most cumulative on the question of notice to the defendant as to the condition of the floor. There was evidence that three other persons including the plaintiff had slipped at or about the same place on the floor where this oily substance had been applied, all of them slipping or falling within a period of thirty minutes of each other and within about one hour after the store was opened for customers to enter. The evidence objected to related to a fourth person falling which was purely cumulative and could not have changed the verdict.

It is evident that counsel for the defendant did not then consider it very serious because he did not follow his objection with the usual request that the court instruct the jury to disregard the portion of the answer that was improper. Had this been called to the court's attention by such a request, such instruction would have been given. Many times during the trial objection was made by defense counsel after an answer was given with a request that the jury be instructed to disregard the answer and in every instance where the objection was sustained, the court instructed the jury as requested by counsel. The court tries to look after these matters without such a request, but a judge on the bench cannot think of everything and is apt to overlook such matters unless counsel make known to the court their wishes and give the court an opportunity to correct any error that may be made through inadvertence.

In the case of Tennessee Gas Transmission Co. v. Fox, 1950, 134 W.Va. 106, 58 S.E.2d 584, 592 the defense attorney asserted prejudice in a similar situation and the court corrected the misapprehension by stating "the error was waived by its attorney in not moving the court to strike them and to instruct the jury that they should be disregarded. To take advantage of remarks considered improper they must be objected to and counsel must request the court to instruct the jury to disregard them."

 Defendant says it was error to permit Robert Lewis to testify as to the condition of the floor about one and one-half hours after plaintiff fell. Robert Lewis was the son of the plaintiff, and after going to the hospital to see his mother, came to the store, arriving there a few minutes before twelve o'clock noon. He said he examined the floor in the east aisle of the store,—running north and south, two counters back from the front of the store. This was the area where his mother fell. His statement was as follows: "I looked at the floor and rubbed my foot over it and you could tell it was

slick and—because there was no friction at all underneath my foot." He was then asked, "What appearance did the surface of the floor give you, if any?" To this question he answered, "Like a newly waxed floor". That was the extent of his testimony. His description of the floor corresponded with that of other witnesses for plaintiff. Four other witnesses, including defendant's window trimmer who was standing near the plaintiff and saw her fall, testified that the floor was oily or slippery at the time the plaintiff fell. Defendant's own witnesses testified that the floor had a different appearance in this area where the liquid had been applied.

It is a well known fact that an oak floor treated with a preserving liquid tends to absorb such liquid and become less slippery with time and use, and if the floor was slippery at noon, it is a reasonable inference that it was so at 10:30 A.M. In the case of F. W. Woolworth Co. v. Seckinger, 5 Cir., 125 F.2d 97, where the plaintiff was injured because of the decayed or worn condition of the floor, the witness had not observed the condition of the floor until 45 days subsequent to the accident. In holding the testimony admissible to show prior condition, the court, at page 98, said:

"Where the condition is of such character that a brief lapse of time would not affect it materially, the subsequent existence of the condition may give rise to an inference that it previously existed. * * * Any intrinsic weakness in such evidence goes to its weight rather than its admissibility, and, in the absence of proof that the subsequent condition does not truly reflect the actual circumstances obtaining at the time of the accident, the inference that the latter condition does not materially differ from the earlier one has strong probative force and undoubted relevance."

Any overemphasis of this testimony was averted by the court when it instructed the jury in considering the testimony of Robert Lewis to take into consideration the interval that had elapsed, and to give his testimony such weight as the jury thought it entitled to receive. The testimony, at most, was only cumulative.

Defendant contends that it was reversible error to admit the evidence of Hattie Messersmith who testified that she saw spots on the coat of plaintiff and that the spots "had a kind of an oily smell". Plaintiff's coat had been left at her dry-cleaning establishment to be cleaned. She testified that she had been in the dry-cleaning business for 33 years and that she was able to distinguish oil or greasy spots on clothing from other spots. She testified, "I said we tested it both ways, we smelled it and we looked at the material and it seemed to have tar or grease on the material". Any person who has been in the dry-cleaning business for 33 years has sufficient experience to tell when a spot smells oily and to recognize grease whe she sees it. In the exercise of extreme caution, the court instructed the jury that in considering her testimony the jury should give it "such weight as the jury thinks it has, based upon her knowledge and experience".

The testimony of this witness was undoubtedly admissible. Generally speaking witnesses must testify only to facts and allow the jury to draw their own conclusion and opinions. However, where the facts as they appeared to the witness cannot clearly and adequately be reproduced, described, and detailed to the jury, the witness may give his impressions, conclusions, and opinions formed from such facts and circumstances as come under his observation. 20 A.J., Evidence, § 769. Under the rule which permits lay witnesses to testify to impressions, conclusions, and opinions drawn from facts observed, not capable of being adequately reproduced before the jury, opinions of non-expert witnesses are admissible as to a great variety of other unscientific questions arising every day and in every judicial inquiry concerning innumerable topics and mat-

ters of common occurrence and observation where it is not practical to lay before the jury the precise facts on which the opinions are based. A witness of ordinary intelligence may testify upon such matters as she observes with her sense of sight or smell, such as odor, or what she sees. It was held in American Glycerin Co. v. Eason Oil Co., 10 Cir., 98 F.2d 479, 484, that there was no error in admitting opinion evidence of certain non-expert witnesses who had had experience and much observation.

■ There is no merit in defendant's contention that the verdict was excessive. In fact the jury might very well have awarded her a much larger verdict under this evidence.

Plaintiff was carried out of the store on a stretcher, taken to the hospital where an orthopedic surgeon was called who took x-rays which showed that she had a very serious fracture of a bone in her hip near the joint. She was in such pain that she had to be given narcotics before they could undress her. She was operated upon by Dr. Stiles who cut into her leg making an incision of about eight inches, and drove a Smith-Peterson nail between the bone fragments and tried to get them to unite, after which she was taken home. In preparing the hip and thigh for surgery the fracture was set by manipulation. The plaintiff was in bed most of the time for a period of about nine months, during which she says she was in constant agony and pain. She was in the hospital sixteen days after this first operation. After arriving home she was in bed and unable to move for six weeks.

In some manner the metal pin in her hip slipped and she had to return to the hospital for a second operation. Another reputable orthopedic surgeon, Dr. Francis Scott, was called into her case and advised the second operation. This time the pin was taken out and another pin was driven in the bone, and a plate was attached, by driving screws into the bone. Further x-rays were taken and again the fracture was reduced or set by manipulation. The bones grew back together, but it was necessary for the nail to be removed, and in January, 1954, more than eight months after the accident, she had to return to the hospital for a third major operation. She was again anesthetized and the screws and pin and plate were removed. This third operation hospitalized her for five days.

A classic example of the fallacy of quoting a miscellaneous phrase out of context is contained in defendant's brief wherein plaintiff's injuries are discussed. Counsel for defendant concludes that Dr. Harlan Styles testified that plaintiff has suffered no disability as the result of this accident. On the contrary Dr. Styles testified that the leg of plaintiff was shortened about one inch and that the head of the femur of plaintiff's leg where the fracture was located is rotated inferiorly about twenty per cent as a result of this injury; that this shortening requires her to walk with a limp; that he had examined her shortly before the trial and that she had sustained her maximum recovery (Tr. p. 70).

Dr. Francis Scott described the two major operations which he performed on plaintiff's hip. He stated that she could now have perfectly normal activity "as far as within her power" (Tr. p. 87). He stated that plaintiff "walks with what we call a gluteal lurch—which resulted from—plaintiff has a one-half inch shortening, is what I got", and "I think that probably is what gives her her lurch or limp". With reference to her hip motion he stated that adduction was twenty-five degrees less than normal and that rotation of her hip was only about fifty per cent of normal. He also testified that she had intermittent pain resulting from the injury; that she had now reached her maximum recovery; and that x-rays revealed the appearance of arthritis which resulted from the injury.

Counsel for defendant urge in their brief that the jury's verdict "was in-

fluenced by partiality and prejudice" and that counsel for the plaintiff did not miss any opportunity to generate in the jury * * * prejudice against the defendant". There is no merit in this contention.

Defendant complains of the action of the court in questioning some of the witnesses. A reading of the record will show that the questions were asked to clarify the evidence and to bring out the true facts in each situation. A reading of the record will show that inferences attributed by defense counsel to questions asked by the court to the effect that the court "attempted to argue with the witness", or give the "impression that the court wanted to see the plaintiff prevail", or "did not believe the witness" are not justified by this record. With two exceptions there was no objection at the time the questions were asked.

In the recent case of Hite v. Western Maryland Railway, 217 F.2d 781, 783, the United States Court of Appeals for the Fourth Circuit said:

"Plaintiff complains, also, because the trial judge questioned plaintiff and witnesses for defendant as to the cause of the failure of the brake to operate efficiently. Again, plaintiff is in no position to complain because he made no objection at the time. Furthermore, plaintiff has no ground of complaint with respect to the matter, as it was entirely proper and the duty of the trial judge to ask such questions as he thought necessary to get to the truth of the case."

Judge Dobie, speaking for the same court in Simon v. United States, 4 Cir., 123 F.2d 80, 83, a criminal case, said:

"Appellant's counsel strenuously complains that the trial judge questioned the witnesses from time to time in an effort to bring out the facts of the case. This is precisely what he should have done. It cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases heard before him; and it is his duty to see that a case on trial is presented in such way as to be understood by the jury, as well as by himself. He should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other. * * * The judge is the only disinterested lawyer connected with the proceeding. He has no interest except to see that justice is done, and he has no more important duty than to see that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury."

Had the court entertained any desire to express an opinion about the case, or indicate an opinion as to who was telling the truth, he would have done that in his final charge to the jury. Instead, the court attempted to see that all the facts were fully developed in the evidence, and then left the decision on those facts to the jury. Not only did the court in his charge refrain from expressing any opinon on the evidence, or any inference from the evidence, but did not discuss or review the evidence. And to dispel any idea that during the trial the court had intended to express any opinion or even inferences from the evidence, the court ended his charge in the following language:

"Now, gentlemen, during the trial I have mentioned parts of the evidence. I am not going to take up your time this evening to review the evidence for you. Sometimes that is the duty of a judge, but it is getting late, the case has been argued by able counsel, and I am not going to trespass on your time. I want to say that during the trial when I have mentioned evidence, of course I did not mention all of it, but

you should consider the evidence which I mentioned to you together with all the other evidence in the case in reaching your verdict, and if your recollections from the evidence or your inferences from the evidence are any different from my inferences, then, of course, you will accept your own recollection and adopt your inferences, because after all you are the sole judges of the facts of the case, and what I have said to you is only for the purpose of helping to clarify the case and to help you reach a just and a fair verdict. It has been my aim in this trial, as near as I know how to do, to assist in seeing that justice is done between the parties to this action."

A reading of the charge to the jury will show that the case was fairly submitted to the jury on conflicting evidence. The plaintiff's evidence is to the effect that she fell and was severely injured because of the slippery condition of the floor, brought about by reason of a floor preserving liquid substance being put on the floor just before the store was opened for business. The defendant's evidence was to the effect that the liquid had been evenly applied, and that it had dried, and that instead of making the floor slick it was less slippery than before the application of the liquid. A portion of the wood floor was exhibited, and, in the presence of the jury, the liquid was applied to the wood by a witness for the defendant so that the jury could see for themselves how soon it dried. The jury examined the wood before and after the liquid was applied and was able to see to what extent, if any, it created a slippery or hazardous condition if applied just prior to the opening of the store.

On this conflicting testimony the jury decided in favor of the plaintiff, and that verdict should not be disturbed. The motion for judgment notwithstanding the verdict and the motion for a new trial are denied.