THE STATE v. EDWIN M. LOMAX, Appellant.—14 S. W. (2d) 436.

Division Two, March 2, 1929.

*Thomas P. Burns* for appellant.

88

*Stratton Shartel,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

DAVIS, C.—On October 3, 1927, the Prosecuting Attorney of Linn County filed an information in the circuit court charging defendant with the embezzlement of $45,334.61, belonging to the Brookfield School District. On change of venue to Caldwell County, the verdict of the jury was guilty, and the punishment fixed was five years' imprisonment in the state penitentiary. Defendant appealed.

The evidence submitted warrants the finding that, during the year 1922 and thereafter, until the bank closed its doors on March 6, 1925, and until a new treasurer was elected about September 1, 1925, defendant was respectively president of the Linn County Bank and treasurer of the Brookfield School District. As president of the bank, defendant was actively engaged in operating and administering its business. The money of the school district was deposited in said bank, subject to the control of defendant upon a checking account, and the account was carried in the name of ''E. M. Lomax, School Treas.'' On March 31, 1927, defendant executed a sworn statement in writing, a portion of which was, on motion of defendant, deleted. As admitted in evidence, omitting signatures and verification, the statement reads:

''Brookfield, Mo., March 31, 1927.

''Statement as to matters between E. M. Lomax, former Treasurer of Brookfield School District, and the said Brookfield School District.

| | | |
|---|---:|---:|
| Balance due the general fund from E. M. Lomax to date | | $28,277.96 |
| Sinking fund same date | | 30,365.66 |
| Interest fund same date | | 2,522.43 |
| Library fund same date | | 627.06 |
| | | $61,793.11 |
| Less overdraft on building fund | $ 48.13 | |
| Less overdraft free text fund | 636.24 | |
| | $684.37 | 684.37 |
| Balance due | | $61,108.74 |
| Less amount on hand in Linn County Bank at time of failure and shown in account of E. M. Lomax, School Treasurer | | 15,774.13 |
| Balance shortage | | $45,334.61 |

"I further state that the said funds of the said Brookfield School District above set forth were applied by me to personal obligations of my own as follows: . . .

"I also, about 1923, applied from these funds $1650.80 in the purchase of 1/4 interest in the Hargadine farm near Brookfield which has since been sold under a deed of trust. I cannot give date more accurately.

"At various times from the year 1920 to Jan. 1, 1925, I invested from these funds at various times in farm operations the sum of about $2000 in all. At various times between Jan. 1, 1920, and Jan. 1, 1925, for farm operations and money loaned a total of $1500. This amount is still due me from said A. W. Baker.

"I advanced to the Brookfield Investment Company from the year 1918 to Jan. 1, 1925, the sum of approximately $15,000. This amount is shown by notes, three in number, payable to John T. Lomax, signed by the Brookfield Investment Company, now in the hands of Chas. K. Hart as trustee for Brookfield School Board. I cannot give these dates more accurately.

"I also invested from these funds in the stock of the Linn County Bank the sum of about $5000 purchase of stock from several persons including Simon Hartman, R. W. Davis and others. This stock still stands in my name on books of Linn County Bank. The balance of this money was applied to payment of interest, taxes, living, etc. In the early part of 1925 I took from this fund the sum of $1200 approximately, which was applied to the payment of the obligations of Chas. H. Jones and understood that this was for payment of interest of farm loan of Chas. H. Jones and wife, Effie Jones. I cannot trace any payment of monies from this fund belonging to the Brookfield School District in the year 1925, except the above sum of $1200. Am able to make positive statements to this sum of $1200 school monies in year 1925—but cannot state definitely as to any other amounts taken in year 1925 abm the abm amount of $1200."

During 1925, the members of the school district became apprehensive concerning its funds and interrogated defendant as to the condition of the account, and his replies were evasive. He was pressed by the members to prepare and deliver to them a financial statement. Instead of doing so, he related an allegory of a bank officer, who was also the school treasurer, who loaned school money to people deemed responsible, who became unable to meet their obligations, so that he could not produce the money at that time, and which resulted in civil suits and the involvement of the bank, which the officer thought would result favorably to the bank, so that about $40,000 could be restored to the school district. At a meeting of the school board on January 11, 1926, defendant said the school money on hand for the purpose of paying bonds had been used for another purpose, that it had been loaned out.

The evidence shows that, as far as the balances were concerned, the books of the bank did not show a shortage. An examination of the school treasurer's books, however, established that the school warrants paid did not equal the amounts checked by defendant from the school district deposits.

Defendant, as treasurer of the Brookfield School District, deposited the funds of the school district in the Linn County Bank. It does not appear that the board members designated the bank as the depository, but they knew that defendant deposited the school funds there, and no objection was made to it. According to the testimony of the bookkeeper, in one instance, this occurred: On January 5, 1925, the account of E. M. Lomax, school treasurer, was debited, charged, lessened or reduced in the sum of $24,830.21, by a check drawn on the account by defendant as treasurer. It represented the payment of warrants. Invariably those checks, so the bookkeeper said, were drawn to the order of warrants, and that in each instance the word "warrants" was a collective usage, meaning that these various cash items, as they were charged or taken out of the account, aggregated a lump sum, which represented a number of school warrants that had been collectively paid and then totaled, the total of the amounts being charged to that account with one item to reduce bookkeeping. The warrants would trickle in sometimes from the clearing house and sometimes through cash letters from city correspondent banks, and sometimes through payment over the counter, and then they would be collected from time to time in what a bank terms its "cash items," and from time to time Mr. Lomax would total them and pay his personal check. On the same day that defendant, as treasurer, drew his check for $24,830.21 on the school account, there appeared entries on the "daily blotter" of the bank, showing the payment of school bonds aggregating $14,000; the payment of school warrants to the amount of $830.21; the payment of an $8,500 note of defendant owing to the bank; and the deposit to defendant's personal account of $1500, all of which aggregated $24,830.21. Similar entries occurred on February 26, 1923; March 3, 1923; April 18, 1923 and September 28, 1923. In some instances, the credit to defendant's personal account was accompanied by the penciled notation "school." In each instance, there was a discrepancy between the aggregate charge against the school district and the aggregate school warrants regularly drawn and paid, and in most instances there appeared a credit to the personal account of defendant equal to the discrepancy. Upon its closing, the Finance Commissioner took charge of the Linn County Bank. It appears from the record that defendant did not undertake to testify or offer evidence in his behalf. Other facts, if any, pertinent to the inquiry, will appear in the opinion.

I. Whether defendant embezzled the money of the Brookfield School District or the money of the Linn County Bank is the vital

question to be determined. Defendant says that it was the money of the Linn County Bank that was embezzled, and argues, consequently, that the record develops a variance between the information, which charges the embezzlement of money belonging to the Brookfield School District, and the proof, which establishes that the money belonged to the Linn County Bank, thus requiring defendant's discharge. The conclusion is reached by reasoning, first, that a general deposit of money in a bank, even by a trustee, classifies the money thus deposited as the money of the bank, so that the relation of debtor and creditor arises; and, second, that, as the acts were done with the knowledge of the officers of the bank, the bank became imbued with such knowledge. It is then argued that the money obtained by defendant through checks drawn on the school account for other than school purposes was the money of the bank, for the bank through the knowledge of defendant knew that defendant was without authority to appropriate money to other than school purposes.

We agree that on the general deposit of money in a bank the relation of debtor and creditor arises. It may be, which it is unnecessary to decide, that the knowledge of defendant was the knowledge of the bank. [Lomax v. Linn County Bank, 1 S. W. (2d) 206.] We also agree that, when an employee takes money in the bank and falsifies the books of the bank to show a lesser sum than the depositor actually had on deposit, the employee embezzles the money of the bank, not the money of the depositor. [State v. Pate, 268 Mo. 431, 188 S. W. 139.] It is possible that the Brookfield School District was in a position to hold the Linn County Bank on account of the embezzlement of defendant, but this may be based on the ground, among others, that the bank had actual or imputed knowledge that it was crediting defendant with money belonging to the school district. [Strong v. Missouri-Lincoln Trust Co., 263 S. W. 1038.]

The responsibility of the Linn County Bank to the Brookfield School District for defendant's acts is aside the question. It is also immaterial that said bank, through defendant's knowledge, knew, at the time the checks were presented and the money appropriated, that defendant intended to convert a portion of the proceeds of the respective checks to his own use. The facts develop that defendant was in control of the checking account of the school district as treasurer, with ostensible authority to draw upon it, and that he actually exercised that authority to the detriment of the school district. When he drew a check upon the school district's funds for an amount in excess of lawful purposes and appropriated the excess sum to his own use by applying a portion of it to the payment of his note and a portion of it to his credit in his depository account, such acts were unwarranted and illegal, and the result was the segregation of the money

of the school district to his own uses and purposes. While the money thus segregated to the payment of the note and to defendant's personal account remained in the bank, it was, nevertheless, subject to the control of defendant, and its appropriation defined the acts as the embezzlement of the school district's money. In addition to drawing upon the account, it was the unlawful appropriation of the money, with the ostensible authority to draw upon the account, that differentiates it from mere falsification of bank books and conversion of money. In the instant case, the defendant actually diverted and unlawfully appropriated money of the school district under his control, while in the instance of falsification of bank books and conversion of money, the depositor never held title to the money appropriated.

However, we need not base the result herein wholly on the foregoing reasoning, for defendant in his written statement admits that he misappropriated the funds of the Brookfield School District by applying said funds to his personal obligations, citing particular instances. It is evident that he obtained these funds under color of authority and by virtue of his checks as school treasurer. The funds thus obtained were still in his hands as trustee for the school district, and, having diverted them from lawful channels to his own use, he was guilty of embezzlement as charged.

II. It is said that defendant's demurrer to the evidence should have been sustained, because a single embezzlement was charged while the proof developed that the total sum charged as embezzled involved a number of peculations at various times. The case of State v. Pratt, 98 Mo. 482, 11 S. W. 977, ably treats and holds the position taken by defendant to be untenable, thus obviating the necessity of elaborating the discussion. See, also, State v. Gebhardt, 219 Mo. 708, 119 S. W. 350; State v. Shour, 196 Mo. 202, 95 S. W. 405; State v. Wise, 186 Mo. 42, 84 S. W. 954.

III. The record shows that the information on which defendant was tried was amended in Caldwell County, where the cause had been transferred by virtue of the awarding of the change of venue. With respect to the allowance of the amendment, defendant charges error. This question is no longer open, for we said in State v. Dixon, 253 S. W. 746, that the ruling in State v. Bartlett, 170 Mo. 658, 71 S. W. 148, 59 L. R. A. 756, cited by defendant, should no longer be followed, thus overruling the case in that regard. Since then we have ratified the ruling enunciated in State v. Dixon, supra, by our rulings in State v. Rennison, 267 S. W. 850, and State v. Tippett, 317 Mo. 319, 296 S. W. 132.

Having considered the record proper and the assignments of error in the motion for a new trial, which we find without error, it follows

that the judgment must be affirmed. It is so ordered. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.