STATE OF WEST VIRGINIA

*v*

WAYMOND F. RILEY

(No. 12565)

Submitted September 28, 1966. Decided November 22, 1966.

Calhoun, Judge, dissenting.

*Chester Lovett,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Leo Catsonis,* Assistant Attorney General, for defendant in error.

Berry, Judge:

The defendant, Waymond F. Riley, was indicted and convicted in the Circuit Court of Wirt County, West Virginia, for the crime of embezzlement. Multiple grounds of alleged error totaling some 90 in number were assigned to support the defendant's motions for a new trial and in arrest of judgment, which were overruled by the trial court. The defendant was sentenced

on October 8, 1965, to confinement in the West Virginia State Penitentiary for a period of not less than one and not more than ten years. Upon application to this Court a writ of error and supersedeas were granted on March 28, 1966, to the judgment of the trial court. The case was submitted for decision on arguments and briefs at the September Regular Term 1966. The assignments of error were reduced in this Court to 18 in number, some of which are repetitious and others without merit.

The defendant was superintendent of schools in Wirt County, West Virginia, for about two years, ending in the middle of the year 1963, after an audit of the finance department of the Board of Education by the State Tax Commission disclosed numerous irregularities. As a result of this audit several indictments were later returned against the defendant, and other persons, on multiple charges indicated therein. The particular charge in this case is based on an indictment returned by the Grand Jury of Wirt County charging the defendant with embezzling $1892.40 of monies of the Board of Education of Wirt County, the description of which to the grand jury was unknown by virtue of said monies or property being in his possession, care or management, because of his position as superintendent of schools of Wirt County, and as such, Secretary of the Board of Education of that County.

On September 28, 1965, the defendant appeared before the Circuit Court of Wirt County with his attorney and presented a plea in abatement based on allegations that there was no evidence presented to the grand jury that the defendant received any United States currency belonging to the Board of Education of Wirt County, or that defendant stole, embezzled or converted to his own use any United States currency belonging to the Board of Education of Wirt County, that such charges were based on hearsay statements, and that the grand jury had no legal or competent

evidence before it upon which to return an indictment against the defendant, and prayed for the indictment to be quashed. The plea was ordered filed by the trial court and after a hearing thereon was denied, after which the defendant presented a motion for a bill of particulars which was ordered filed by the trial court, and after a hearing thereon, this motion was denied and the defendant then pleaded not guilty to the charge contained in the indictment, issue was joined thereon and the case was set for trial on October 4, 1965.

On October 4, 1965, the defendant moved the court in writing out of the presence of the jury to grant him a continuance in order to enable him to study and question any additional jurors subpoened to attend the Circuit Court of Wirt County at its September, 1965 term. This motion was ordered filed and the court, after hearing arguments of counsel and maturely considering said motion, overruled it.

After the motion for a continuance was overruled the defendant moved the court in writing out of the presence of the jury to grant him a change of venue which motion was ordered filed, and the court, after hearing arguments of counsel thereon and maturely considering such motion, overruled it. To all such rulings of the court the defendant objected and excepted.

The motion for a continuance was based on a contention that approximately 34 additional jurors had been summoned to attend the Circuit Court of Wirt County for the September, 1965 term, which the defendant did not know about until three days before the case was set for trial, and therefore, he did not have adequate opportunity to investigate and question them.

The motion for a change of venue was accompanied by numerous newspaper clippings relative to a school bond issue voted on by the people of Wirt County

while the defendant was superintendent of schools, as well as stories with regard to the indictments returned by the grand jury and 13 affidavits which were couched in identical language, to the effect that widespread knowledge of the charges against the defendant existed in Wirt County, and that a jury chosen from the residents of Wirt County would have information to the charges against the defendant through hearsay, and in the opinion of the various affiants he could not receive a fair trial by a jury in the Circuit Court of Wirt County. Eleven of the affidavits were from Route No. 2, Elizabeth or the Town of Elizabeth and two from the Town of Palestine, West Virginia. Four of the affidavits have the same last name, three pairs of names are the same in six of the affidavits, while the remaining three are separate names. Five of the affidavits were dated July 5, 1965, and eight dated October 3, 1965. The motion for a change of venue, with exhibits and affidavits, was presented after the case was called for trial and the state filed no counter affidavits, and it is the state's contention that nothing needed to be done with regard to the said motion because the motion came too late. It is the contention of the defendant that the failure of the state to file counter affidavits in opposition to said motion would entitle him to a change of venue.

The newspaper clippings attached to the motion for a change of venue as exhibits were from a local newspaper and Charleston and Parkersburg papers. The stories were merely factual stories with regard to a school bond issue and a recount thereof, the printed text of the State Tax Commissioner's audit, and of an investigation held in connection therewith to determine if any criminal offense had been committed. Some of the news stories criticized the defendant for mistaken judgment or lack of administrative ability, while others were favorable to him. The newspaper articles reflect no inflammatory statements in connection with the charges brought against the defend-

ant. They are merely factual statements of the proceedings pertaining to the matter.

Another assignment of error asserted by the defendant was the failure to get an impartial jury. This matter was raised by a motion challenging 12 jurors for cause after a lengthy voir dire consisting of about 25 pages in the record. The motion was denied by the trial court on the ground that all 12 testified under oath that they would give the defendant a fair and impartial trial and that his guilt would have to be proved beyond a reasonable doubt before they would vote for a conviction. Notwithstanding the fact that many of the jurors had heard about the charges from outside sources, the voir dire was conducted at great length by the court and by the attorneys for both the defendant and the state. Two of the jurors questioned were held to be disqualified by the court, dismissed from the panel and others obtained in their places. Although two of these 12 jurors on the panel had served on other grand juries which had returned indictments against the defendant for similar offenses, but not on the grand jury which indicted him for the charge for which he was being tried, they were not disqualified by the court on challenges for cause.

The evidence introduced in the trial of the case before the jury showed that the offenses for which the defendant was charged concerned an arrangement, or deal, between the defendant and one Troy Kidd, a barber of Mt. Hope, West Virginia, wherein funds or monies of the Board of Education of Wirt County, West Virginia, were obtained by means of a transaction whereby the defendant received half of the amount charged as being embezzled in the indictment, and Kidd received the other half without any benefit or consideration whatsoever to the Board of Education for the entire amount. Under the rules pertaining to the funds of the Board of Education, checks or county pay orders dispersed from the Board's funds had to be signed by the defendant who was ex-officio secretary of the Board, and also required the signature of the

President of the Board. The transaction with regard to the issuing and cashing of the checks or orders appears to have been without the knowledge of the President of the Board as to any wrongdoing, and it is not clear from the record how his name was signed on the pay order except that there is a statement in the State Tax Commission's audit to the effect that pre-signed orders in blank, or without any payee contained thereon, were left exposed in the office of the President of the Board of Education.

Kidd appeared at the trial in answer to the summons issued by the state and was placed on the witness stand; whereupon, he refused to testify on advice of counsel unless he was granted immunity from prosecution. Thereupon, the court, upon the request of the prosecuting attorney granted such immunity and Kidd then testified to the scheme or plan and all the transactions in connection therewith between the defendant and him. Kidd testified that some time before November 13, 1962, the defendant who had known Kidd for some time called him and asked him if he would like to make a "couple of C's". Kidd then went to the office of the defendant where defendant presented him with a list of names to be used as fictitious companies and presented an outline, or scheme, by which money of the Board of Education was to be paid to the nonexistent companies and expended by them. The defendant asked Kidd how much he would give him back on an $1800 check and he replied that he would give half of it back. The Board of Education's schools would obtain nothing in the transaction. The name of Kanawha Building Supply Company was chosen to be used in the first deal. Kidd stated that he asked the defendant, "What are we going to sell the Board of Education?", and the defendant replied, "Well, we will sell them conduit." At that time the Board of Education was constructing school buildings from the bond issue money and was purchasing considerable quantities of material used in the construction of the buildings.

Kidd further testified that defendant came to Charleston on November 13, 1962, under a pre-arrangement made between them and brought with him a pay order for $1892.40, dated that day, and made payable to the fictitious company, Kanawha Building Supply Company, which he gave to Kidd; that Kidd gave the defendant one-half the amount of the order in cash and then deposited the check in the Kanawha Valley Bank to the credit of the fictitious company. Three days later the account in the name of the fictitious company was closed by Kidd and money which had been deposited in the fictitious account was deposited in the name of ''Olympic Sales Co.'' for tax purposes. At the same time Kidd deposited the check or order, the defendant deposited $900 in a joint account which he had with his wife in the Kanawha Valley Bank. Later, in order to cover up this transaction Kidd had some invoices printed in Oak Hill for the fictitious company, and an invoice was prepared on these forms by the defendant for use in his record, showing the sale of the conduit and related items in great detail. The original invoice typed by the defendant was incorrect, because it showed the sale of 1/4 inch conduit when there was no such conduit made. Later this invoice was revised to show 1/2 inch conduit.

Another revision of the invoice was made apparently in connection with a discount. According to Kidd's testimony, this was done because the defendant told him that the only way he could issue the check or order for payments for materials without advance approval of the Board of Education was to obtain a discount, and the defendant gave to him a rough draft of a letter to be furnished to the defendant explaining that there was a discount in connection with this matter. The rough draft of the letter was submitted into evidence and Kidd testified that it was in defendant's handwriting. Calculations were made on another sheet to determine the amount of the discount in order to make the net amount the same as the check. Kidd testified that these calculations and figures were also in de-

fendant's handwriting. Kidd further testified that the defendant prepared a rough letter to Kidd explaining how he had delivered the material which he stated he never had or delivered. All the original copies of these memoranda from the defendant for Kidd's use were introduced into evidence.

The invoices which were introduced into evidence numbered about seven and are rather confusing, as there are minor differences in the invoices. The invoices appear to consist of one set of three, one of two, and another of two, and Kidd was not positive as to which one the defendant selected to use in connection with the check he issued for $1892.40. The numbers of the invoices are slightly different, but they are all dated October 18, 1962, to furnish the basis for the check which was issued and each indicated it was order Number 1.

The check which was deposited by Kidd in the Kanawha Valley Bank went through banking channels and on November 14, 1962, arrived back at the drawee bank in Wirt County, where the Board of Education's funds for the building project were deposited and where it was paid by the drawee bank and charged to the Board of Education's account.

Kidd's testimony shows that the plan or scheme was originally conceived in Wirt County. The memoranda, the papers and invoices, the check or orders, were all prepared in Wirt County. The bank transactions are undisputably proved by the independent records of the banks concerned. Kidd obtained a post office box at Belle, West Virginia, in the name of the fictitious company for mailing purposes.

These facts must be used in determining whether the venue is in Kanawha County or Wirt County as this question appears in one of the errors assigned by the defendant.

The defendant who testified in his own behalf disputed Kidd's testimony in all particulars that would

prove criminal intent on the part of the defendant, but it is confirmed as to the fact that there was some kind of transaction or dealings between the defendant and Kidd, but the defendant insists they were legal. He denied the telephone call with regard to the propositions, admitting, however, that he had had conversations with Kidd concerning sales of materials to the Board of Education but that he thought they were legal propositions. He admitted writing the notes or memoranda on some of the exhibits introduced during Kidd's testimony, but stated that he had merely jotted down notes for Kidd's benefit. He denied that he had suggested the names of fictitious companies, and claims that he had paid Kidd in good faith and had been assured by Kidd that the materials called for in the invoices had been delivered. He stated that Kidd sent him a list written in longhand of what he had to sell, and that he typed it on the invoice form for Kidd to use as an order. He stated that he went out to the construction job to see what could be used and discussed the matter with the foreman. He denied that he had prepared the invoices in final form. He stated that he met Kidd in Charleston to deliver the check to save Kidd the trouble of coming to Elizabeth. He denied that Kidd gave him back half the amount of the check. His explanation as to how he had deposited almost the same amount on the same day in Charleston, with Kidd standing by his side, was because of the fact that a few days before that time his wife's grandmother, who had lived at his house, died and she had $1100 in cash at the time she died. He stated that she gave him $200 as a gift for his own use, and after her death he deposited the remaining $900 in his account, and later used some of it to pay the funeral and other expenses. He stated that he settled her estate about two years later and admitted that this money left by his wife's grandmother was not listed by him in the appraisement of her estate as required by law and no accounting was made in connection therewith, all of which was a violation of the provisions of Code, 44-1-14, as amended.

The defendant stated he had the authority to purchase materials without prior approval of the Board if a discount was obtained. This particular item totaling $1892.40 involved in this case was not approved by the Board of Education until December 6, 1962. The defendant stated he assumed he signed the check or pay order in Elizabeth, West Virginia.

The errors assigned by the defendant in this Court for reversal are as follows:

"1. The Court erred in refusing to sustain defendant's Plea in Abatement. 2. The Court erred in refusing to grant petitioner's Motion for a Bill of Particulars. 3. The Court erred in refusing to grant defendant's Motion for Continuance. 4. The Court erred in refusing to grant defendant's Petition for a Change of Venue, with supporting exhibits, including thirteen affidavits. 5. The Court erred in not directing a verdict for the defendant at the conclusion of the State's evidence for the following reasons: a. The State failed to prove that the defendant was guilty of the crime of embezzlement. b. The State failed to prove that the defendant received 'United States currency' belonging to the Board of Education of Wirt County, West Virginia, as charged in the indictment. c. The State failed to prove venue of the alleged criminal act, in Wirt County, West Virginia. d. There were fatal variances between the indictment and the proof. e. The State failed to prove that there was a conversion to the defendant's 'own use' of the amount of $1892.40, in United States currency as alleged in the indictment. f. For other objections, exceptions and motions of the defendant overruled by the Court during the presentation of the State's case, which are not specifically mentioned herein. 6. The State failed to prove venue in Wirt County, West Virginia. 7. The State failed to prove the crime of embezzlement. 8. The State failed to prove that the defendant was guilty of embezzling 'United States' currency. 9. There were fatal

variances between the indictment and the proof. 10. The Court erred in granting State's Instructions Nos. 1, 2 and 4. 11. The Court erred in refusing to give defendant's instructions Nos. 1, 4, 9, 11, 12, 13, 3, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 38, 37, 36, 35, 34, 33, 32, 31, 10, 39, 42 and 41. 12. The Court erred in not granting the instructions given on behalf of the defendant in the order in which they were numbered and presented. 13. The Court erred in reading to the jury the State's instructions following the instructions given by the defendant, instead of the usual procedure of reading the State's instructions first, and the defendant's instructions last. 14. The Court erred in admitting all of the exhibits of the State, proper foundation for all of said exhibits, not being properly laid, nor properly presented. 15. The Court erred in not declaring a mistrial upon comments of the Prosecutor concerning the character of the defendant before the defendant first put his own character into issue. 16. The Court erred in refusing to grant the defendant's motion challenging the jury for cause. 17. The Court erred by allowing the accumulation of so many minor points of error, the effect of which, when accumulated, was so severe as to constitute prejudicial error. 18. The verdict is contrary to the law and the evidence in this case, for the reasons above noted, and for all other reasons as noted in the pleadings and motions, and for all other reasons as noted in objections of counsel, both prior to, during, and following the trial, which said objections appear in the record of this case, but have not been otherwise specifically noted herein.''

Some of these assignments have apparently been abandoned because they are not discussed or augmented by authorities cited in the defendant's brief, and other assignments lack merit, as will be discussed later.

The first assignment that the court erred in refusing to sustain defendant's plea in abatement is not

discussed in any manner in defendant's brief. This assignment is not only without merit, but has, apparently, been waived. It should be mentioned however, that this plea was filed on September 28, 1965, praying for the indictment to be quashed on the ground that no legal evidence was introduced before the grand jury. This is not good grounds for quashing an indictment. *State v. Woodrow,* 58 W. Va. 527, 52 S. E. 545; *State v. Dailey,* 72 W. Va. 520, 79 S. E. 668; *State v. Dawson,* 129 W. Va. 279, 40 S. E. 2d 306.

The second assignment of error is the refusal of the trial court to grant the defendant's motion for a bill of particulars. This assignment of error is also apparently waived, because there is no discussion in connection with this matter in defendant's brief. However, it is clear that this assignment is without merit, because when the defendant entered his plea of not guilty on September 28, 1965, he advised the court that he was fully informed as to all matters contained in the indictment, at which time the case was set down for trial on October 4, 1965. Then, too, the granting or refusing a bill of particulars in a criminal case rests in the sound discretion of the trial court, and such discretion was not clearly abused in the case at bar. *State v. Hudson,* 128 W. Va. 655, 37 S. E. 2d 553; *State v. Greer,* 22 W. Va. 800.

The third assignment of error, the refusal of the trial court to grant defendant's motion for a continuance was not discussed in defendant's brief and is also without merit. The ground assigned was the calling of additional jurors and it is not a ground for continuance. *State v. Pietranton,* 140 W. Va. 444, 84 S. E. 2d 774. This question also rests with the sound discretion of the trial court which was not clearly abused. *State v. Jones,* 84 W. Va. 85, 99 S. E. 271; *State v. Lutz,* 88 W. Va. 502, 107 S. E. 187.

The fourth assignment of error dealing with change of venue is discussed in the argument of defendant's brief to some extent. It is the contention of the defend-

ant that because of the fact that he filed a motion for a change of venue with exhibits consisting of stories in the newspapers and affidavits from citizens of Wirt County, to which the state failed to file any counter affidavit, he is entitled to a change of venue as a matter of right. This is not the law in this state or any other state if proper cause is not shown. The defendant cites the case of *State v. Siers,* 103 W. Va. 30, 136 S. E. 503, to support this contention.

The petition with affidavits in the *Siers* case was apparently timely filed, and the affidavits contained statements of fact to the effect that a hostile sentiment against the accused existed throughout the entire county in which he was brought to trial, and it was held in such case that where the state did not controvert the charges contained in the petition and supported by the affidavits that good cause was shown for removal to another county. In the case at bar there are no statements of fact that the sentiment throughout the County of Wirt was hostile to the defendant, and the affidavits merely expressed opinions that local prejudice existed against the defendant. It is well settled by decisions of this Court that affidavits which merely state the opinion of an affiant with conclusions that local prejudice exists against a defendant are not sufficient grounds for the granting of a change of venue. *State v. Douglass,* 41 W. Va. 537, 23 S. E. 724; *State v. Sheppard,* 49 W. Va. 582, 39 S. E. 676; *State v. Weisengoff,* 85 W. Va. 271, 101 S. E. 450; *State v. Lutz,* 88 W. Va. 502, 107 S. E. 187; *State v. Beale,* 104 W. Va. 617, 141 S. E. 401.

An application for a change of venue in a criminal case is addressed to the sound discretion of the trial court and the burden rests upon the defendant to show good cause for the change. *State v. Lutz, supra; State v. Beale, supra; State v. Pietranton, supra; State v. Hamric,* 151 W. Va. ____, decided by this Court July 15, 1966. Factual statements and widespread sentiments by newspapers are not sufficient for a change of venue. *State v. Pietranton, supra; Bearden v.*

*United States of America,* 304 F. 2d 532; *State v. Hamric, supra.* It has been held that it is not sufficient merely to show that prejudice exists against an accused but that it must appear the prejudice against him was so great as to prevent him from receiving a fair and impartial trial. *State v. Beale,* 104 W. Va. 617, 624, 141 S. E. 2d 401.

It is true that the case of *State v. Flaherty,* 42 W. Va. 240, 24 S. E. 885, held that the fact a jury free from exceptions can be impaneled is not conclusive proof, on a motion for a change of venue, that prejudice does not exist, endangering a fair trial, but the decision in that case was based on the refusal of the trial court to receive other evidence offered by the accused to support the motion for a change of venue. The defendant in the case at bar offered no further evidence other than the exhibits of newspaper articles which were claimed improper and the affidavits.

If the state fails to reply to a motion for a change of venue, or to file counter affidavits, it then becomes a question of law for the court to ascertain whether or not the defendant has made a case sufficient to support the granting of the motion for a change of venue. *Yancey v. State,* 98 Ga. App. 797, 107 S. E. 2d 265; *State v. Taylor,* 26 P. 2d 598; *Carraway v. State,* 138 N. E. 2d 299. See *State v. Watson,* 49 A. 2d 174. The trial court in the instant case, by virtue of the denial of the motion for a change of venue, found that the petition supported by the exhibits and affidavits was not sufficient in law to award the granting of the change of venue, and under the facts and circumstances of the case, and authorities relative thereto, it does not appear that the trial court abused its discretion in its ruling thereon. A refusal to grant a motion for a change of venue based on affidavits stating opinions and not facts is not an abuse of discretion of the trial court. *State v. Barick,* 389 P. 2d 170.

However, there exists another controlling reason for the refusal to grant a change of venue in the case

presented here; that is, because it was not timely filed. It should be pointed out that several of the affidavits used in the motion for a change of venue were obtained on July 5, 1965, and when the defendant appeared with his attorney before the Circuit Court of Wirt County on July 28, 1965, he filed a plea in abatement and prayed that the indictment be quashed which was heard and overruled by the trial court, he filed a motion for a bill of particulars which was overruled by the trial court, and he entered a plea of not guilty upon which issue was joined and the case was set down for trial on October 4, 1965. No motion was made at that time for a change of venue. When the case was called for trial on October 4, 1965, the defendant moved for a continuance which was overruled, because good cause was not shown, and only then did the defendant move, out of the presence of the jury, for a change of venue, based only on his written motion, exhibits and affidavits, with no request to introduce any further evidence; and after hearing arguments on this motion, the court overruled it and proceeded to impanel the jury to try the defendant. It has been uniformly held that a motion for a change of venue must be presented at the earliest practical moment. 22 C.J.S., Criminal Law, § 202; *People v. Jones,* 51 Ill. App. 2d 391, 201 N.E. 2d 194; *People v. Lawrence,* 29 Ill. 2d 426, 194 N. E. 2d 337, Cert. denied 376 U.S. 946; *People v. Wilfong,* 17 Ill. 2d 373, 162 N. E. 256.

The general rule is that an application for a change of venue comes too late if it is made after submitting other questions for the court's determination. *State ex rel. Alfani v. Superior Court for Grays Harbour County,* 245 P. 929.

It has been held that such motion comes too late after the cause has been reached for trial and immediately before the jury has been impaneled. *Fallin v. State,* 86 Ala. 13, 5 So. 423; *People v. Chessman,* 238 P.2d 1001, Cert. denied *Chessman v. California,* 72 S.Ct. 650, 343 U.S. 915, 96 L.Ed. 1330, Re. denied 72 S.Ct. 773, 343 U.S. 937, 96 L.Ed 1344. It was held in

the case of *Daugherty v. People,* 239 P. 14, that a trial court did not abuse its discretion in refusing to grant a motion for a change of venue made on the day of the trial, notwithstanding the fact that no counter affidavits were filed. It has also been held that it is not error for a trial court to deny a motion for a change of venue where the motion was not made until after the court had denied the motion to quash the indictment, partially denied a motion for a bill of particulars, and denied a motion for a continuance; and in such case the motion for change of venue is untimely. *People v. Golson,* 32 Ill. 2d 398, 207 N.E. 68; *People v. Wilfong, supra.*

Assignment of error number 16, which is discussed in the defendant's brief, that the court erred in refusing to grant the defendant's motion challenging the jury for cause would follow chronologically because this procedure occurred at the end of the voir dire before any testimony was introduced at the trial of the case. The record indicates that although a lengthy voir dire was held, there were only twelve challenges for cause. All twelve qualified under cross examination as jurors to give the defendant a fair and impartial trial and stated that it would take evidence beyond a reasonable doubt for conviction. Of the twelve jurors only five challenged for cause are perfunctorily mentioned in the defendant's brief and only two warrant discussion. Two of the jurors so answering, Mr. Bell and Mr. Daugherty, stated that they had served on another grand jury which had indicted the defendant for an offense similar to the one for which he was presently being tried. After stating that they could give the defendant a fair trial and would not convict him unless he was proved guilty beyond all reasonable doubt, the trial court allowed these two jurors to remain on the panel. Even if they were later struck off by peremptory challenges, it would not cure the error if they were not qualified to serve as jurors in the trial of the case. *State v. Dushman,* 79 W.Va. 747, 91 S.E. 809; *State v. Flint,* 142 W.Va. 509, 96 S.E.2d 677.

The only persons disqualified from jury service in this State, by statute, are idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes. Code, 52-1-2, as amended.

There are no additional statutory provisions in West Virginia relative to challenges for cause and the common law rule pertaining thereto prevails in this State, and the causes of prima facie disqualification are: "(1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included." *State v. Dushman,* 79 W.Va. 747, 91 S.E. 809. The above listed principal causes for challenge at common law are taken from the above cited *Dushman* case. It will be noted that the sixth ground reads: " * * * that he was formerly a juror in the same case; * * * ." This is not to be construed as to mean a different or another case. 50 C.J.S., Juries, §224. It was held in the early case of *State v. McDonald,* 9 W.Va. 456, that even though a petit juror who served on the jury which convicted the defendant had also served on the grand jury which indicted him, it would not warrant the setting aside of the verdict where it appeared that the defendant had a fair and impartial trial and when the motion to set aside the verdict on the ground that one of the jurors was a member of the grand jury which returned an indictment against him was made after the verdict.

In the case of *State v. Cooper,* 74 W.Va. 472, 82 S.E. 358, it was held that a person who served on the grand jury which returned an indictment against the accused is disqualified for service as a member of the petit jury in the trial of the person accused. In that case the court excused two jurors who had served as members

of the grand jury which had returned an indictment against the accused, and the defendant, or accused, objected to their being excused. This Court held that it was not error to excuse the jurors. In the case of *State v. Jones,* 128 W.Va. 496, 37 S.E.2d 103, a motion was made to set aside the verdict on the ground that one of the members of the petit jury which returned the verdict was also a member of the grand jury which returned the indictment and it was held that even if this assignment was properly presented in the record, which was not done in that case, it would not require reversal.

It is true that the motion to exclude the two jurors who had served on other grand juries which had returned indictments for similar offenses against the defendant was made before the case proceeded to trial, which was not done in the cases referred to hereinabove, but it is clearly indicated in the *McDonald, Cooper* and *Jones* cases that even if a member of the petit jury was a member of the grand jury which returned the indictment, and the entire record shows that the defendant had a fair and impartial trial, such disqualification would not warrant setting aside the verdict of the jury. It has been specifically held that the fact that one juror was a member of a grand jury which returned an indictment against the accused for a similar offense but not the same ipso facto is not ground for his exclusion for service on the petit jury to try the case. *Johnson v. State,* (Tex.) 29 S.W. 473.

It has also been held that if one of the trial jurors served on the grand jury which returned the indictment, but did not participate in finding the indictment, he was not disqualified to serve on the petit jury in the trial of the case. *Comm. v. Di Stasio,* 8 N.E.2d 923, 297 Mass. 347, 113 A.L.R. 1133, Cert. denied 58 S.Ct. 50, 302 U.S. 683, 82 L.Ed. 527 and 58 S.Ct. 370, 302 U.S. 759, 82 L. Ed. 587.

The case of *Slade v. Commonwealth,* 155 Va. 1099, 156 S.E. 388, held in effect that jurors were not dis-

qualified merely because they served on another jury where the same transaction was involved, and to be disqualified the same evidence must be relied upon to convict the defendant.

It has also been held that relationship of one of the jurors to the prosecuting attorney does not disqualify such juror. *Garland v. United States,* 4 C.C.A., 182 F.2d 801.

A somewhat similar situation with regard to the question of disqualification of jurors was involved in the case of *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502, wherein the third point of the syllabus held: "When it appears that a juror in a subsequent criminal case can fairly and impartially act and render a just verdict upon the evidence adduced at the trial, he is not disqualified to serve as such in the subsequent case merely by reason of his service as a juror or his presence as a spectator at a prior trial of a different defendant charged with a different but similar offense, although the evidence is similar and the witnesses in behalf of the prosecution are the same in each case." The Court, in discussing this question in the *Carduff* case, said: "As previously indicated, the careful and thorough examination of the members of the panel of twenty jurors on their voir dire by the judge of the criminal court did not disclose that any of the members of the panel, including those challenged for cause by the defendant, entertained any bias, prejudice, or partiality toward the defendant, or had formed any opinion of his guilt or innocence, or had assumed an attitude which would prevent any of them from giving the defendant a fair and an impartial trial or from rendering a just verdict based upon the evidence in the case. In the absence of any showing that the jury was not an impartial jury, this Court should not disturb the discretion exercised by the trial court in determining the question of the eligibility of the members of the jury to serve as such and should not reverse its finding that the jurors were free from bias, prejudice,

or partiality and were competent to serve in that capacity."

It is contended that because the other offenses were similar in nature and character and involved other embezzlements from the same source, such would disqualify the members of another grand jury from petit jury service. In connection with this contention it should be pointed out that if the other offenses were part of the same plan or scheme and similar in character, such evidence of the other offenses would be proper evidence for all twelve of the petit jurors to hear in the trial on the charge involved in this case to show motive and intent. 7 M.J., Evidence, §48; *State v. Adkins*, 109 W.Va. 579, 155 S.E. 669; *State v. Leatherwood*, 112 W.Va. 339, 164 S.E. 295; *Barber v. Commonwealth*, 182 Va. 858, 30 S.E.2d 565.

Inasmuch as assignments of error numbers 5, 6, 7, 8, 9 and 18 are all related assignments they will be discussed together.

It is one of the contentions in these assignments of error that the state failed to prove venue in Wirt County. Apparently, this contention is based on the fact that the check or order prepared by the defendant in Wirt County was brought to Charleston by the defendant and given to Kidd, who in turn gave him half of the amount of the check in cash and deposited the check in the Kanawha Valley Bank, all of which was done in Kanawha County, and therefore, venue was in Kanawha County and not in Wirt County.

The uncontradicted evidence relative to this matter shows that the check or order was drawn in Wirt County, and all other alleged unlawful acts were committed in Wirt County, with the exception of bringing the check to Charleston and depositing it there to the credit of the fictitious company, Kanawha Building Supply Company, in the Kanawha Valley Bank. When it was deposited in the Kanawha Valley Bank and credited to the fictitious company the credit was

merely the money of the Kanawha Valley Bank, and the conversion of the money of the Board of Education of Wirt County did not take place until it was returned to the drawee bank in Wirt County where the funds of the Board of Education for building purposes had been deposited. When the Wirt County Bank, through its banking correspondents, sent the money represented by the check to the Kanawha Valley Bank, the Charleston bank was then reimbursed for crediting the account of the fictitious company. The check or order was never paid until it reached the drawee bank, and any endorsements on the check at any other place would not be sufficient to provide venue for the prosecution of the crime of embezzlement. *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774. The *Pietranton* case clearly indicates that venue lies in the county where the drawee bank is located and the check is deposited for payment, and until the check is paid there is no conversion or embezzlement. This is true because even if a check is written and endorsed, it may never be cashed. The *Pietranton* case turns on the fact that the evidence did not show the location of the bank upon which the check was drawn. The evidence showed that the bank was located in Weirton but that the City of Weirton was located in both Brooke and Hancock counties, and because of the fact that the bank might have been located within the boundry of Hancock County this Court held that venue was not proved in Brooke County, because only the endorsement of the check was executed in that county. This matter is discussed in 18 Am. Jur., Embezzlement, §65, wherein it is stated: ''The fact that the purpose of the accused was effectuated in another county does not alter the rule, where the instrumentalities were set in motion within the jurisdiction of the court. Thus, the venue for an embezzlement is properly laid in the county where the accused drew checks and committed all other unlawful acts, although the depository bank which paid the checks was situated in another county.'' This clearly indicates that the venue was in Wirt County because

the check was drawn in Wirt County and all the alleged unlawful acts, except the depositing of the check to the credit of the fictitious company, took place in Wirt County.

It was held in the case of *State v. Berle,* 117 W.Va. 825, 188 S.E. 481, that: "As a general rule, in embezzlement prosecutions, venue must be laid in the county wherein conversion was consummated." In that case property or materials belonging to another were obtained in Monongalia County where no intent to defraud was shown, and the property or materials were then taken into Harrison County and sold and the money received was converted to the use of the accused. It was held in the *Berle* case that venue was in Harrison County. The conversion in the case at bar was consummated in Wirt County because that is where the funds of the Board of Education were deposited and disbursed on the check.

Other assignments of error in this group of related assignments are that the state failed to prove the crime of embezzlement, failed to prove that the defendant was guilty of embezzlement of United States currency or money, and that there was a fatal variance between the indictment and the proof.

The indictment returned against the defendant contained two counts, one for the embezzlement of the money in the amount of $1892.40, the description, etc., being to the grand jurors unknown, and the second count was for the larceny of the same amount. Upon motion of the defendant, the trial court required the state to elect to prosecute the defendant under the embezzlement count. The indictment was drawn under the embezzlement statute in this State, Code, 61-3-20. This statute provides that:

"If any officer, agent, clerk or servant of this State, or of any county, district, school district, * * * embezzle or fraudulently convert to his own use, * * * money * * * or any effects or property of any other person, which shall have come into

his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of the larceny thereof. * * *

"And whenever any officer, agent, clerk or servant of this State, or of any county, district, school district, * * * shall appropriate or use for his own benefit, or for the benefit of any other person, any * * * money, * * * or funds, belonging to this State or to any such county, district, school district, * * * he shall be held to have embezzled the same, and be guilty of the larceny thereof. In the prosecution of any such officer, agent, clerk or servant of this State or of any county, district, school district, * * * charged with appropriation or use for his own benefit or the benefit of any other person, * * * money, * * * or funds, belonging to this State or to any county, district, school district * * * it shall not be necessary to describe in the indictment, or to identify upon the trial, the particular * * * money, * * * or funds, appropriated or used for his own benefit or for the benefit of any other person. * * *"

The evidence in this case is clear and undisputed that the defendant was an agent or servant of the Board of Education, and that the money on deposit in the bank upon which the order was drawn was in a building fund for the Board of Education, that such was under the care or management of defendant by virtue of his office or employment and that he had authority to issue such drafts on such funds for the purchase of materials without approval of the school board when a discount could be obtained, and thus it clearly comes within the provisions of this Statute. *State v. Workman,* 91 W.Va. 771, 114 S.E. 276. It has been held that where one having authority to draw checks on a county account does so and unlawfully sends it to a third party, or gives it away and never actually obtains the money himself, he is guilty of embezzlement. 88 A.L.R.2d 688, footnotes 2 and 4; *Territory v. Hale,* 13 N.M. 181, 81 P. 583.

There is no common law crime of embezzlement, and the statute merely makes one who converts to his own use the property of another which is legally in his custody, guilty of larceny. The case of *State v. Workman,* 91 W. Va. 771, 114 S.E. 276, is quite similar to the case at bar. Two county commissioners of the County Court of Raleigh County, West Virginia, were indicted under the same statute involved here for conspiracy with another in a scheme or plan to buy a poor farm for $3650 more than it was offered for. A check or order was issued for $12,500 in payment for the property and was deposited in a bank in Raleigh County. The owner of the property only received 8 or 9 thousand dollars for the sale of his property and the balance was divided between the defendants and others. It was held in that case to be embezzlement under the statute because the money of the county was in the control of the commissioners and was paid out by their order. The essential elements of embezzlement in such cases were listed as a trust relationship of the property or money involved belonging to someone else and in the possession of the defendants by virtue of their offices and converted to their own use with intent to defraud. These essential elements are all present in the instant case.

In the case of *State v. Lomax,* 322 Mo. 86, 14 S.W.2d 436, the defendant was treasurer of the school fund and president of the bank. He placed the money of the school in the bank, then issued checks drawn on the school fund to pay personal debts. The defendant contended that he did not embezzle the school money, that the money he used was the bank's money. It was held in that case that he had the custody and control of the school fund as treasurer and that it was the school's money, and therefore he was held to be guilty of embezzlement.

In the case of *People v. Knott,* 104 P.2d 33, 128 A.L.R. 1367, it was held that a county auditor having authority to issue warrants or orders payable by the

county treasury who drew an order for expenses which were not incurred was deemed to have under his control the amount represented by the order drawn by him to pay such expenses and he was therefore guilty of embezzlement. It was stated in that case: ''One who is not in possession of money may have it under his control in the sense that it is under his direction and management.''

It is true that in a prosecution for embezzlement the property embezzled must ordinarily be proved as alleged in the indictment, but if a check, or other evidence of indebtedness, was merely the means by which the money alleged to have been embezzled was procured, there is no variance. 29A C.J.S., Embezzlement, §37.

It is clear that the evidence introduced in the case at bar complied with the requirements of the statute in proving the crime of embezzlement, the type of property or money embezzled, and there was no variance between the indictment and the proof.

Another assignment of error relied on by the defendant is that the trial court erred in not declaring a mistrial upon comments by the prosecuting attorney concerning the character of the defendant before the defendant put his own character into issue. This assignment of error is based on a statement to the court by the defendant's attorney, during the trial of the case in the presence of the jury, when he noticed certain papers in the possession of the prosecuting attorney and asked that all documents in the possession of the prosecuting attorney be given to him for examination. The exact statements made by Mr. Friend, the attorney for the defendant, and Mr. Black, the prosecuting attorney, as found in the record on pages 237 and 238, in connection with this matter, are:

''Mr. Friend: Your Honor, there appear to be in the possession of the prosecutor additional documents not introduced into evidence allegedly

written by the defendant and allegedly pertaining to transactions between the defendant and the witness on the stand, and counsel for the defendant has not been given any copies of them and these documents have never been produced for examination by counsel for the defendant, and I move all documents in the possession of the prosecutor be produced for examination by counsel for the defendant for the purpose of cross-examining this witness as to these transactions.

"Mr. Black: Your Honor, with reference to what the defense attorney has indicated, I have other documents in my possession which were furnished to me by Mr. Kidd; however, they relate to other offenses, not the one charged in the indictment, and have nothing to do whatever with this case, and to reveal them to him at this time would perhaps be revealing other cases.

"Mr. Friend: I think, whether they are relevant or not, I can best determine that.

"The Court: It is up to the state to produce its case, and I am going to overrule the request and tell the jury to disregard entirely statements made by counsel, whether by counsel for the defendant or by the prosecuting attorney, and not consider the same as evidence of anything.

"Mr. Friend: Your Honor, I move for a mistrial on the ground of the remarks of the prosecutor respecting other offenses in front of the jury.

"The Court: The motion is overruled.

"Mr. Friend: Show my exception. As I understand, the Court's ruling is that the other documents in the possession of the state will not be produced for my examination before my cross examination, is that correct, your Honor?

"The Court: Let me ask a question. Were any of these other documents used by you in your examination of the witness?

"Mr. Black: No, your Honor.

"The Court: Did they furnish you any foundation for your examination of the witness?

"Mr. Black: No, your Honor.

"The Court: Then the motion is denied."

In the first place, counsel for the defendant had no right to demand, in the presence of the jury and in the middle of the trial, that all papers in the possession of the prosecuting attorney be handed over to him, and any statements made by the prosecuting attorney in connection with such demand, or request, would be justified under the circumstances, and any error which may have been committed was invited by the attorney for the defendant and a judgment will not be reversed for an error introduced in the record or invited by the party asking for the reversal. 1 M.J., Appeal and Error, §256. *Truschel v. Rex Amusement Co.,* 102 W.Va. 215, 136 S.E. 30, Cert. denied 274 U.S. 736, 47 S.Ct. 574, 71 L.Ed. 1316; *James Sons Co. v. Hutchinson,* 79 W.Va. 389, 90 S.E. 1047; *State v. Calhoun,* 67 W.Va. 666, 69 S.E. 1098.

Seven of the assignments of error deal with instructions. It is the contention that the trial court erred in giving all three instructions offered by the state, in refusing 34 of the 43 instructions offered by the defendant, in not giving the instructions on behalf of the defendant in the order in which they were numbered and presented, and in reading to the jury the instructions offered by the state following the reading to the jury the instructions offered by the defendant instead of reading the state's instructions first and the instructions offered by the defendant last. We find no error in the three instructions offered by the state and given by the court. They merely cover the principles of law governing the matter involved in this case. Similar instructions appear to have been approved in *State v. Pietranton, supra.*

Instructions which were offered by the defendant and refused appear to have been properly refused be-

cause they are repetitious in many instances and covered by other instructions given, while others were not complete or proper statements of the law and the facts and circumstances of the case. One group of instructions offered by the defendant dealt with circumstantial evidence, which is not involved in the case presented here. The nine instructions offered by the defendant and given by the court adequately covered the defendant's theory of the case. They told the jury that: (1) the indictment was not to be considered as evidence of the defendant's guilt, (2) the burden of proof rests on the state to prove the defendant guilty beyond all reasonable doubt, (3) the defendant was presumed by law to be innocent of the charge contained in the indictment, (4) it was the sole judge of the credibility of the witnesses, (5) the defendant had a right to testify in his own behalf and have his evidence considered the same as any other witness, (6) reasonable doubt defined as lack of abiding conviction or moral certainty requires acquittal, (7) the jury was not to be concerned with any actions on the part of the defendant except for matters confined solely with the innocence or guilt of the defendant of the offense charged in the indictment, (8) the testimony of any witness that appeared to be hostile should be scanned with caution, and, (9) that innocence of defendant does not have to be proved to justify a finding of ''not guilty''. The *Pietranton* case would appear to be authority for the refusal of the trial court in a case of this kind to give the instructions offered by the defendant referred to above. Some of the assignments of error and objections made to the instructions offered by the state and given by the court appear to be frivolous, such as, that instruction number 2 summarizing the indictment should fail because it did not contain the words ''against the peace and dignity of the state'', that the instructions offered by the defendant were not read in the order in which they were numbered and presented, and that the court erred in reading the instructions offered by the defendant first and those

offered by the state last. These assignments have no merit. All instructions are the court's instructions and shall be read by the court to the jury as the action and ruling of the court, without reference to or disclosing the party by whom they may have been prayed. Code, 56-6-20. The court may refuse all instructions offered by either party and give a written charge of its own. Code, 56-6-19. It is for the court to instruct the jury and when given they are instructions of the court and not the parties who request them. 10 M.J., Instructions, §13.

Assignments of error were included to the effect that the admission of all state's exhibits was not upon a foundation properly laid and that the court erred by allowing the accumulation of many minor points of error, the accumulation of which constituted prejudical error.

Although many repeated objections were made by counsel for the defendant to the admission of exhibits into evidence by the state, we have carefully examined the admission of the exhibits into evidence and find no error in connection therewith.

We have included in the discussion of this opinion many matters to which there were objections made during the trial of the case by the attorney for the defendant in order to ascertain whether or not any accumulation of such alleged errors would be prejudicial to the defendant, and we are of the opinion, as indicated herein, that no prejudicial error was committed during the trial of this case that would warrant the reversal thereof. The evidence introduced by the state if believed by the jury clearly shows that the defendant was guilty of embezzlement as charged in the indictment.

On a careful examination of all the evidence introduced during the trial of this case it can not be said that the defendant is not proven guilty beyond a reasonable doubt of the charge of embezzlement contained in the indictment returned by the grand jury of Wirt

County, and this Court will not reverse the lower court for any error in the trial unless the error is harmful to the defendant. *State v. Lane,* 44 W.Va. 730, 29 S.E. 1020; *State v. Gebhart,* 70 W.Va. 232, 73 S.E. 964; *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513.

For the reasons stated in this opinion, the judgment of the Circuit Court of Wirt County is affirmed.

*Affirmed.*

CALHOUN, JUDGE, dissenting:

Respectfully I dissent. My dissent relates primarily to the action of the trial court in refusing, upon a proper and timely motion made in behalf of the accused, to exclude two jurors who had sat on prior grand juries which indicted the accused for different but related offenses. My view is that the trial court committed a flagrant and most unfortunate abuse of discretion in this respect and that, in line with previously well settled legal principles, the error on the part of the trial court is such as should have compelled a reversal and an award of a new trial by this Court. I believe, and shall undertake to demonstrate, that the holding of the Court in this respect is wholly lacking in proper precedent for its justification and contrary to the spirit of a rule which has endured for centuries as a valued safeguard against unfair trials of persons upon criminal charges.

In the syllabus of *State v. McDonald,* 9 W. Va. 456, this Court stated: ''It is a principal cause of challenge to a juror that he was one of the grand jury which found the indictment.'' This legal principle has been faithfully adhered to in this state since the time of its formation. See *Dilworth v. Commonwealth,* 12 Gratt. 689; *State v. Cooper,* 74 W. Va. 472, pt. 1 syl., 82 S. E. 358; *State v. Jones,* 128 W. Va. 496, 501, 37 S. E. 2d 103, 106. It is a legal principle which is universally recognized and applied. 31 Am. Jur., Jury, Section 228, page 191; 50 C.J.S., Juries, Section 224, page 966.

It is buttressed by considerations of reason, common sense and justice.

This relaxed application of the general rule seems to be based upon the following statement in 50 C.J.S., Juries, Section 224, page 966: "The fact that one was a member of a grand jury which indicted the accused for a similar offense is not ground for his exclusion from the jury. * * *." In support of that statement, a footnote refers to *Johnson v. State,* 34 Tex. Cr. 115, 29 S. W. 473, and 35 C.J. page 327, Note 34. In 35 C.J., Juries, Note 34, page 327, there appears a statement which is the same as that quoted above from 50 C.J.S. The footnote referred to in 35 C. J. as the basis for the statement, the same footnote referred to in 50 C.J.S., is as follows: "*Johnson v. State,* 34 Tex. Cr. 115, 29 S. W. 473. But see 2 Hawkins P.C. c.43, sec. 27." The precedents or authorities cited in the footnotes, do not sustain the proposition for which they are cited. Quite the contrary is true. This is the basis for my confident assertion that the Court's holding in this case is wholly lacking in precedent for its justification.

*Johnson v. State,* the Texas case referred to above and relied upon in the majority opinion was decided in 1895. The opinion in that case cites no legal authority or precedent whatsoever, and it is quite brief. It does not appear from the opinion that objection to the petit juror was made before he was seated and permitted to serve. While it appears from the opinion that one of the petit jurors had previously sat on a grand jury "which presented a bill charging * * * a similar offense", it does not appear that the similar offense was related in time or circumstances as are the offenses involved in the present case. Approximately one-half of the length of the opinion in the Texas case is embodied in the following statement: "The fact that one of the jurors who tried the case was on the grand jury which presented a bill charging appellant with a similar offense to this, but not the same *ipso facto, does not disqualify the juror. The*

*transactions may have been distinct.* \* \* \*.'' (Italics supplied.) More pertinent, I believe, are comparatively recent Texas cases holding, in accordance with the general rule, that a conviction must be reversed if, over objection of the accused, the trial courts fail to exclude as a petit juror one who sat on the grand jury which returned the indictment. *Wolfe v. State,* 147 Tex. Cr. 62, 178 S. W. 2d 274 (1944) ; *Mitchell v. State,* 116 Tex. Cr. 65, 27 S. W. 2d 800 (1930). II Hawkins Pleas of the Crown, page 577, to which reference was made in the Corpus Juris footnote, contains the following language, relating to disqualification of petit jurors : ''\* \* \* And this exception against a juror, that he hath found an indictment against the party for the same cause, hath been adjudged good, not only upon the trial of \* \* \* such indictment, but also upon the trial of another indictment or action \* \* \* wherein the same matter is either in question, or happens to be material, though not directly in issue.''

It appears from the record, briefs and oral arguments in this case that the defendant, as county superintendent of schools, was charged with various instances of thefts or embezzlements of money or property belonging to his employer, the board of education. In connection with the voir dire examination it was disclosed that Orley Bell, one of the jurors who sat in the trial of the case, had previously sat on a grand jury which had indicted the defendant, apparently for theft or embezzlement of a welder. Marvin Daugherty, who sat as a petit juror in the trial of the case, had sat on a prior grand jury and had participated in the return of an indictment for embezzlement of $300 and an indictment for larceny of $300 against Riley, the defendant.

The question naturally arises, why did not counsel for the accused strike Bell and Daugherty? Possibly the simple answer is that counsel for the accused moved the trial court to exclude a total of twelve prospective jurors on the basis of answers made by

them on the voir dire examination. The motion was overruled. The accused, of course, was entitled to but six peremptory challenges.

"A defendant in the trial of a felony is entitled to a panel of twenty qualified jurors, each free from bias or prejudice, before being required to exercise his right as to peremptory challenges." State v. Flint, 142 W. Va. 509, pt. 1 syl., 96 S. E. 2d 677; State v. Gargiliana, 138 W. Va. 376, pt. 1 syl., 76 S. E. 2d 265.

Under the provisions of Code, 1931, 62-3-3, as amended, " * * * one accused of a felony is entitled as a matter of right to a panel of twenty jurors, unexceptionable under the rules of the common law, before being called upon to exercise his right of peremptory challenge." State v. Dushman, 79 W. Va. 747, pt. 1 syl., 91 S. E. 809. The majority opinion quotes from the Dushman case an enumeration of the principal causes for challenge at common law. To the same effect, see Watkins v. Baltimore & Ohio Railroad Co., 130 W. Va. 268, 274, 43 S. E. 2d 219, 223. The point I wish to emphasize is that the language quoted in the majority opinion from the Dushman case concludes as follows: " * * * and causes of the same class or founded upon the same reason should be included." I consider this as an admonition to trial courts that, in determining qualifications of petit jurors to sit in trials of criminal cases, substance should not be sacrificed to mere empty form.

"The object of the law is to secure jurors whose minds are wholly free from bias or prejudice for or against the accused. State v. Hatfield, 48 W. Va. 561, 37 S. E. 626. This is the very basis for the great weight and sanctity given to their verdicts. Those who administer the law must respect its wise and salutary rules of procedure, in order that like respect for law and order may be inspired in others. * * *." State v. Messer, 99 W. Va. 241, 245, 128 S. E. 373, 374. So basic and fundamental are our traditional requirements of fair trials of criminal cases by impartial

juries that we should not split hairs and construct legal bases lacking in substance in determining qualifications of jurors for trials of such cases. "The power of the court to reject jurors of its own motion is not limited to a decision of the strict legal question of qualifications of the juror, or confined to the enumerated grounds of challenge * * *; but the court's power may be exercised for any cause which the court in its discretion deems sufficient to render the juror unfit to serve." 50 C.J.S., Juries, Section 249, page 1006.

The Court in the majority opinion seems to reason that the other offenses were part of a general plan or scheme and similar in character and that, therefore, evidence tending to prove the defendant's guilt of the other offenses would have been proper in the trial of this case to show motive and intent, under a rule stated by this Court in numerous cases, including the following: *State v. Withrow,* 142 W. Va. 522, pt. 7 syl., 96 S. E. 2d 913; *State v. Evans,* 136 W. Va. 1, pt. 2 syl., 66 S. E. 2d 545; *State v. Lewis,* 133 W. Va. 584, pt. 4 syl., 57 S. E. 2d 513; *State v. Geene,* 122 W. Va. 51, syl., 7 S. E. 2d 90. From this, as I understand the majority opinion, it is reasoned that information Bell and Daugherty may have received relative to other related offenses while serving as grand jurors would have been proper evidence to go to the petit jury in the trial of this case and that, therefore, they were not disqualified to sit as petit jurors. I cannot grasp or discern a tenable basis for any such reasoning.

I am troubled also by the statement of the prosecuting attorney, in the presence of the jury, that documents in his possession related "* * * to other offenses, not the one charged in the indictment, * * *." This was a wholly uncalled for response to a proper request of defense counsel directed to the trial judge. I cannot agree that this gratuitous statement by the prosecuting attorney can be excused under the legal principles relating to invited error. The rule of invited error can have no proper application.

Obviously the statement made by the prosecuting attorney in the presence of the jury was prejudicial. This error and the error in not excluding Bell and Daugherty as jurors have a strong tendency to accentuate the evil in each other. When the statement was made by the prosecuting attorney, defense counsel merely moved for a mistrial. After the motion to direct a mistrial was overruled, counsel did not move the court to direct the jury to disregard the statement. I would not reverse on this latter ground alone, but I would reverse and grant a new trial on the basis of the trial court's refusal, upon proper and timely motion, to exclude Bell and Daugherty from the panel of twenty jurors.